(October 23, 1909.)

BENJAMIN F. McCLAIN, Jr., by BENJAMIN F. Mc-CLAIN, His Father, Guardian ad Litem, Respondent, v. LEWISTON INTERSTATE FAIR AND RACING ASSOCIATION, LIMITED, a Corporation, and NOR-MAN VOLLMER, Appellants.

[104 Pac. 1015.]

APPEAL—NOTICE—ADVERSE PARTY—ACTION FOR TORT—ALLEGATIONS OF COMPLAINT—DEFENSES—JOINDER OF DEFENDANTS—INJURIES BY DO-MESTIC ANIMALS—TRESPASS—RECOVERY OF DAMAGES FOR INJURY WHEN VIOLATING LAW—ELEMENTS OF DAMAGES FOR PERSONAL IN-JURY—RIGHT OF MINOR TO RECOVER DAMAGES.

1. In an action to recover damages for tort brought against several defendants, where at the close of the evidence for plaintiff a motion for a nonsuit is sustained as to one of the defendants, and the cause thereafter proceeds against the other defendants and a verdict is rendered against such defendants; and the judgment of the court is written upon two separate pieces of paper in favor of the defendant upon the motion for a nonsuit and in favor of the plaintiff against the defendants, against whom the verdict is rendered; and such papers are filed in court at different dates and entered in the judgment dockets at different dates; and the defendants, against whom the judgment is rendered, appeal from the judgment or that part of the judgment rendered against them, and do not appeal from the judgment rendered on the motion for nonsuit, the defendant in whose favor the judgment of nonsuit is entered is not an adverse party as to that portion of the judgment from which the appeal is taken, and could in no way be prejudicially affected by a reversal of such part of the judgment, and need not be served with the notice of appeal.

2. In an action to recover damages for a tort, the complaint should allege the place where the injury occurred, in order to give the defendant an opportunity to set up all defenses which might arise by reason of the law of the place where the injury occurs.

3. Where, however, the complaint fails to allege the place where the injury occurs, in order for the defendant to avail himself of such defect in the complaint, he must rest upon the court's ruling upon the demurrer and refrain from pleading such facts as a defense.

4. If, however, after a demurrer to the complaint, because the complaint does not allege the place of injury, is overruled, the defendant pleads as a defense facts arising by reason of the law of the place where the accident occurred, then he is in no way prejudiced by the ruling of the court upon the demurrer.

5. In an action for tort, a complaint alleging that the defendants wrongfully, recklessly, carelessly, negligently, wantonly and with utter disregard of the safety of the various riders engaged in a speed contest, permitted a dog to trespass upon, run upon, over and about such track, alleges the liability of the defendants as joint tort-feasors, and the complaint is not subject to a demurrer for misjoinder of defendants.

6. In an action for trespass against the rights of the plaintiff. where the allegations show that the defendants acted in concert or by unity of action in permitting such wrong, there is no misjoinder of parties defendant.

7. If domestic animals, such as oxen, horses, dogs, etc., injure anyone in person or property while rightfully in the place where such injury is done, the owner is not liable for such injury unless he knew that such animal was accustomed to do such mischief; and in suits to recover damages for such injury, knowledge must be alleged and proved, for unless the owner knew that such animal was vicious or possessed such traits, he is not liable. If, however, he had such knowledge, he is liable.

8. If domestic animals injure any person or property, while wrongfully in the place where the injury is done, the owner is liable, although he had no notice that such animal was accustomed to do such wrong or mischief. In such case the ground of action is that the animal was wrongfully in the place where the injury was done; and it is not necessary to allege or prove any knowledge on the part of the owner that such animal had previously been vicious.

9. Where a dog invades and trespasses upon the legal rights of a person and injures person or property, and such invasion and trespass is the result of the negligence of the owner, the owner of such dog is liable for the damages done.

10. The fact that the plaintiff was riding in a race upon which money had been wagered, even if in violation of law, would not

Points Decided.

justify the defendants in injuring him, when such injury was not the result of an effort to suppress such wrong or enforce the law; neither would it deny him the right to recover damages sustained by him in a race, caused by the negligent acts of the defendant in interfering with such race.

11. In an action for damages for personal injury, it is competent to ask the plaintiff to tell the jury how he suffered and the extent of the suffering.

12. In an action to recover damages for personal injuries, it is competent to show the earning capacity of the party injured, the nature and extent of his business, and his inability to pursue such business in his accustomed way, as aid and guide to the jury in exercising their judgment in determining the amount of damages to be awarded.

13. A minor cannot recover compensation for impaired capacity to pursue the ordinary vocations of life prior to his majority, unless it be alleged and proven that he has been given his liberty, that his parents do not claim the right to receive such compensation; but evidence may be offered showing his earning capacity to aid and guide the jury in determining the amount of damages to be awarded after he reaches his majority.

14. Leading questions are within the legal discretion of the trial judge, and where such discretion is not abused, this court will not reverse a case because the court allowed leading questions.

15. Persons who are keepers, harborers or custodians of dogs are required to exercise proper judgment as to the place where the dog is taken and the position in which the dog may be placed, and are responsible for the acts of such dog; and when dogs are taken to a place not suitable or proper or placed or suffered to be placed in a position where they become a dangerous agency, and an injury results therefrom, a jury is warranted in concluding that the owner, harborer or person in control of such dog is guilty of negligence.

16. Where a person takes a dog to a racetrack, or is in control of such dog at and near the track, and suffers or permits such dog to go upon the racetrack and interfere with the riders in such race, and an injury results therefrom to a rider, the owner or person in control of such dog is guilty of negligence and is liable for the damages thereby sustained.

17. Instructions given by the court examined and found to correctly state the law as laid down in this opinion, and to cover the questions requested by the defendants, in so far as such requests were the law governing the case.

(Syllabus by the court.)

Idaho, Vol. 17—5

APPEAL from the District Court of the Second Judicial District, for the County of Nez Perce. Hon. Edgar C. Steele, Judge.

Action to recover damages for personal injuries. Judgment for plaintiff. Defendants appeal. *Affirmed.*

George W. Tannahill, and Fred E. Butler, for Appellants.

The complaint is ambiguous, uncertain and unintelligible in that it does not state where the accident occurred— whether in the state of Washington or state of Idaho. The defendants were entitled to have the complaint made definite and certain upon this point, for the reason that if the accident alleged occurred in a state where a statute gave one remedy and the state of Idaho gave a remedy entirely inconsistent, the court could not entertain the action, as in personal actions the remedy is governed by the *lex fori.* (*Anderson v. Milwaukee & St. P. R. Co.*, 37 Wis. 321; *Mexican Nat. R. Co. v. Jackson*, 89 Tex. 107, 59 Am. St. 28, 33 S. W. 857, 31 L. R. A. 276.)

The complaint does not state facts sufficient to constitute a cause of action, in that there is no allegation that the animal in question was accustomed to do or had done, before the act complained of, similar acts to those alleged in the complaint, or that the defendant Vollmer had knowledge of such act or acts. The scienter is not alleged. (*Mason v. Keeling*, 12 Mod. 332; *Fritsche v. Clemow*, 109 Ill. App. 355; *Feldman v. Sellig*, 110 Ill. App. 130; *Ward v. Danzeizen*, 111 Ill. App. 163; *Harvey v. Buchanan*, 121 Ga. 384, 49 S. E. 281; *Fettman v. Hecken etc. Co.*, 91 N. Y. Supp. 773; *Cook v. Levintan*, 94 N. Y. Supp. 396; *Staetter v. McArthur*, 33 Mo. App. 218; *Smith v. Donohue*, 49 N. J. L. 548, 60 Am. Rep. 652, 10 Atl. 150.) "The owner or harborer of a domestic animal is liable for personal injuries inflicted by it only when he has notice of its vicious traits." (7 Current Law, 121; *Cooper v. Cashman*, 190 Mass. 75, 76 N. E. 461, 3 L. R. A., N. S., 209; *Petey Mfg. Co. v. Dryden*, 5 Del. 166, 62

Atl. 1056; *St. Louis Nat. Stock Yards. v. Morris,* 116 Ill. App. 107; *Bentz v. Page,* 115 La. 560, 39 So. 599.)

There is a misjoinder of parties defendant. Norman Vollmer is improperly joined as defendant with the Lewiston Interstate Fair and Racing Association, in that no concert of action between the defendants is shown, and no acts were pleaded or alleged sufficient to show whereby the defendants may be made liable as joint tort-feasors. (*Minnich v. Lancaster Elec. Ry. Co.,* 203 Pa. 632, 53 Atl. 501; *Wiest v. Electric Traction Co.,* 200 Pa. 148, 49 Atl. 891; *Bard v. Yohn,* 26 Pa. 482; *Gallagher v. Kemmerer,* 144 Pa. 509, 27 Am. St. 673, 22 Atl. 970; *Miller v. Highland Ditch Co.,* 87 Cal. 430, 22 Am. St. 254, 25 Pac. 550;. *Chipman v. Palmer,* 77 N. Y. 51, 33 Am. Rep. 566; *Navigation Co. v. Richards,* 57 Pa. 142, 98 Am. Dec. 209; *Blaisdell v. Stephens,* 14 Nev. 17, 33 Am. Rep. 523; *Butler v. Ashworth,* 110 Cal. 614, 43 Pac. 4, 386; *Goodman v. Coal Twp.,* 206 Pa. 621, 56 Atl. 65.)

The facts set forth in the amended complaint clearly show that the accident could not have been reasonably foreseen by a man of ordinary intelligence, and the negligence, if any, is not such as to be actionable. (*Drum v. Miller,* 135 N. C. 204, 102 Am. St. 528, 47 S. E. 421, 65 L. R. A. 890; *Cleghorn v. Thompson,* 62 Kan. 727, 64 Pac. 605,. 54 L. R. A. 404; *Chicago B. & Q. Ry. Co. v. Stumps,* 55 Ill. 374; *City of Alleghany v. Zimmerman,* 95 Pa. 287, 40 Am. Rep. 649; *Gravelle v. Minneapolis & St. L. Ry. Co.,* 10 Fed. 711, 3 McCrary, 352; *Shaw v. Craft,* 37 Fed. 317.)

All of paragraphs 13, 14 and 15 of the complaint which relates to the question of damages is speculative, redundant, surplusage, and immaterial, and the damages are not such as are proper to be included in the complaint or for which a recovery could be had. They are speculative, uncertain, exemplary, expected profits, and the allegation was insufficient to admit the line of proof offered in support of the same. (*Bierbach v. Goodyear Rubber Co.,* 54 Wis. 208, 41 Am. Rep. 19, 11 N. W. 514; *Wolff Shirt Co. v. Frankenthal,* 96 Mo. App. 307, 70 S. W. 378; *Central Coal etc. Co. v. Hartman,* 111 Fed. 96, 49 C. C. A. 244.)

"In an action for injuries to an infant, plaintiff may recover for loss of time and earnings caused by such injury after reaching his majority, but not the loss of time and earning power during minority." (16 Ency. Pl. & Pr. 468.)

If at the time of the accident the plaintiff was aiding and abetting knowingly, and was an instrument of a gambling device in violation of the gambling laws of the state in which the accident occurred, he is in no position to ask the aid of the courts for any injury received while so furthering and aiding such device. (*St. Louis Fair Assn. v. Carmody,* 151 Mo. 566, 74 Am. St. 571, 52 S. W. 365; *Downing v. Ringer,* 7 Mo. 585; *Ashbrook v. Dale,* 27 Mo. App. 649; *Friend v. Porter,* 50 Mo. App. 89; *Sprague v. Rooney,* 104 Mo. 358, 16 S. W. 508; Beach Cont. Neg., sec. 47; Cooley on Torts, 2d ed., p. 151; *Devor v. Knauer,* 84 Ill. App. 184; *Hall v. Corcoran,* 107 Mass. 253, 9 Am. Rep. 30.) Gambling on horseraces is a game, under the statutes prohibiting games of chance. (*Swigart v. People,* 154 Ill. 284, 40 N. E. 432; *Bollinger v. Commonwealth,* 98 Ky. 574, 35 S. W. 553; *People v. Weithoff,* 51 Mich. 203, 47 Am. Rep. 557, 16 N. W. 442; *Ellis v. Beale,* 18 Me. 337, 36 Am. Dec. 726; *State v. Stripling,* 113 Ala. 120, 21 So. 409, 36 L. R. A. 81, 82.)

I. N. Smith, J. L. Harn, and Clay McNamee, for Respondent.

This court has no jurisdiction of the appeal, because John P. Vollmer has not joined in the appeal, nor in the bill of exceptions nor in the motion for a new trial nor in any of the appellate process, although he is a defendant in a case of joint tort. No bond of appellants runs in favor of John P. Vollmer, and no adversary process on appeals was served on him. (*Humphrey v. Hunt,* 9 Okla. 196, 59 Pac. 971; *Jones v. Quantrell,* 2 Ida. 153, 9 Pac. 418; *Baker v. Drews,* 9 Ida. 276, 74 Pac. 1130; *Doust v. Rocky Mountain Bell Tel. Co.,* 14 Ida. 677, 95 Pac. 209.)

John P. Vollmer is the owner of the dog as to third parties, because the dog is as much a member of his family as it

is possible for such an animal to be, and the sustaining of the nonsuit as to John P. Vollmer is clear error. Hence a reversal of the judgment as to him, and as to all the joint defendants, would affect his rights. (*Hornbein v. Blanchard,* 4 Colo. App. 92, 35 Pac. 187, 2 Cyc. 379, collating cases.) The dog was a trespasser when the injury happened. Therefore, his owners, harborers, keepers and masters were all liable for all injuries inflicted by him. (*State v. Churchill,* 15 Ida. 645, 98 Pac. 853, 19 L. R. A., N. S., 835; *Chunot v. Larson,* 43 Wis. 536, 28 Am. Rep. 567; *Decker v. Gammon,* 44 Me. 322, 69 Am. Dec. 99; *Beckett v. Beckett,* 48 Mo. 396; 2 Cyc. 376, cases; 21 Ency. Pl. & Pr. 894, cases.)

The propensity of dogs to chase animals is of such general knowledge that scienter is presumed. (*Lyons v. Merrick,* 105 Mass. 71 (76); *Schmid v. Humphrey,* 48 Iowa, 652, 30 Am. Rep. 414; *Hussey v. King,* 83 Me. 568, 22 Atl. 476; *Conway v. Grant,* 88 Ga. 40, 30 Am. St. 145, 13 S. E. 803, 14 L. R. A. 196; 2 Jaggard on Torts, 856, 857.) The dog being a trespasser, however, it was not necessary to either allege or prove the habit or disposition, nor the scienter, both of which affirmatively appear in the above allegations of the complaint. (*Chunot v. Larson, supra; Decker v. Gammon, supra; Kemp v. Briard,* 5 Neb. (Unof.) 499, 98 N. W. 1048; *Beckwith v. Shordike,* 4 Burr. 2092; *Green v. Doyle,* 21 Ill. App. 205; *Plummer v. Ricker,* 71 Vt. 114, 76 Am. St. 757, 41 Atl. 1045; *Hayes v. Smith,* 62 Ohio St. 161, 56 N. E. 879; *Shulz v. Griffith,* 103 Ia. 150, 72 N. W. 445, 40 L. R. A. 117; *Harris v. Carstens Packing Co.,* 43 Wash. 647, 86 Pac. 1125, 6 L. R. A., N. S., 1164; *Van Leuven v. Lyke,* 1 Comst. (1 N. Y.) 515, 49 Am. Dec. 346; *Dearth v. Baker,* 22 Wis. 73; 21 Ency. Pl. & Pr. 894, cases; 2 Cyc. 376, cases.)

The omission of the place (from the complaint) of the accident was cured by the answer of the defendant in setting it up affirmatively, and availing himself of every pretended defense which he claims the place would give him. The rule of pleading over prevails in Idaho. (*State v. Thum,* 6 Ida. 323, 55 Pac. 858.) No injury was caused because of the alleged "gambling," nor was it attributed thereto.

The injury was not caused by the race; the race was a condition and not a cause. The cause of the injury was a supervening act of the defendants, and had no connection with the attempt to suppress the race. (1 Street's Foundation of Legal Liability, 171-185; 1 Jaggard on Torts, 185-191; *Norris .v. Litchfield*, 35 N. H. 271, 69 Am. Dec. 546; *Welch v. Wesson*, 6 Gray, 505; *Gates v. Burlington, C. R. & N. R. Co.*, 39 Iowa, 45; *Maguire v. Middlesex Ry. Co.*, 115 Mass. 239; *City of Pueblo v. Smith*, 3 Colo. App. 386, 33 Pac. 685.) The racing of horses for premiums is not "gambling." *(Harris v. White*, 81 N. Y. 532; *Ballard v. Brown*, 67 Vt. 586, 32 Atl. 485; *People v. Fallon*, 152 N. Y. 12, 57 Am. St. 492, 46 N. E. 296; *Alvord v. Smith*, 63 Ind. 58.)

Horseracing is not a game within the meaning of the gambling statutes. (*State v. Rorie*, 23 Ark. 726; *State v. Hayden*, 31 Mo. 35, 20 Cyc. 887.)

STEWART, J.—This is an action to recover damages for an injury sustained by the plaintiff, alleged to have occurred while plaintiff was riding a racehorse in a race, at the Lewiston Interstate Fair and Racing Association, by the horse coming in contact with a large greyhound, alleged to belong to John P. Vollmer and Genevieve Vollmer, and which was under the care and custody of the defendant, Norman Vollmer.

The cause was tried to a jury and at the close of the plaintiff's case, on motion, the action was nonsuited as to the defendant, John P. Vollmer, and a verdict returned against the defendants, Norman Vollmer and the Lewiston Interstate Fair and Racing Association, Ltd., in the sum of $7,500 or $3,750 each. This appeal is from the judgment and from the order overruling a motion for a new trial.

The notice of appeal was not served upon the defendant, John P. Vollmer; neither was he joined in the appeal either as appellant or as respondent. The record shows that at the close of the evidence upon behalf of the plaintiff, the defendant John P. Vollmer made a motion for a nonsuit as to himself, which motion the court sustained, and the cause then proceeded against the other defendants, and was sub-

mitted to the jury and a verdict returned in favor of the plaintiff against the defendants, the Lewiston Interstate Fair and Racing Association, Ltd., and Norman Vollmer.

This verdict was filed in court on February 18, 1909; on the same day a judgment was rendered upon said verdict, and in accordance therewith, jointly against the defendants for $7,500 and entered of record. In this judgment no mention whatever was made as to the defendant, John P. Vollmer. Subsequently, on February 23d, a judgment was filed in favor of John P. Vollmer for costs on his motion for nonsuit.

The defendants, the Lewiston Interstate Fair and Racing Association, Ltd., and Norman Vollmer, appeal from the judgment or that part of the judgment entered on February 18th. No appeal was taken by either the plaintiff or the present appellants from the judgment of nonsuit entered in favor of the defendant John P. Vollmer on February 23d. Upon this record the respondent moves to dismiss the appeal for the reason that the notice of appeal was not served upon John P. Vollmer. The contention made by respondent is that while the judgment was written on two separate pieces of paper and entered in part at different times, yet that both papers constituted but one judgment, and that in order to perfect an appeal it was necessary to serve the same upon John P. Vollmer, he being an adverse party. Sec. 4808, Rev. Codes, clearly recognizes the right to appeal from a specific part of a judgment without appealing from the entire judgment; and even if it be conceded that the two papers referred to constitute but one judgment, still the appellants would have a right to appeal from any specific part of such judgment. The judgment rendered upon the motion for nonsuit by John P. Vollmer terminated said cause as to such defendant, and there remained for disposition the issues made between the plaintiff and the other defendants.

The appeal being taken from that part of the judgment against the other defendants, even though reversed, would not affect the judgment rendered in favor of John P. Vollmer on his motion for a nonsuit, for the reason that as to such

judgment or part of the judgment no appeal was taken either by the appellants or the respondent against whom such judgment was entered. John P. Vollmer was not an adverse party as to that portion of the judgment from which the appeal was taken, and could in no way be prejudicially affected by a reversal of such part of the judgment. For this reason it was not necessary to serve him with the notice of appeal.

The complaint is lengthy and alleges the facts with great detail. In substance it charges that the Lewiston Interstate Fair and Racing Association was and is a corporation engaged in the promotion of agricultural and livestock exhibits and speed contests, and the offering of prizes to the winners in such contests and conducting speed contests upon a fair ground under its management and control; that from the 7th to the 12th day of October, 1907, while such association was engaged in holding its annual fair, the plaintiff, Benjamin F. McClain, Jr., was, at the request of such association, invited and engaged in the occupation of riding horses in speed contests given under the auspices of said association upon its fair ground and racetrack; that the defendants, John P. Vollmer and Norman Vollmer, were at such time and long prior thereto the owners, harborers, keepers and masters of a certain dog of the species, class or kind known as a running dog or dog of the chase, of the class or kind called a greyhound; that the exact relation of said defendants and the members of the Vollmer family, between themselves, to or concerning said dog was unknown to the plaintiff; that the dog was kept, harbored, owned and maintained by John P. Vollmer at his family residence in Lewiston, Idaho, and that his family constituted one family residing at such place, and that Norman Vollmer was a member of said family and resided with John P. Vollmer. That said dog was by the members of said family permitted to and accustomed to accompany any of the members of the family to various and sundry places; that it was the natural propensity, trait and tendency of all dogs of the class or kind known as the greyhound, of the class to which the dog belongs, and was

the trait of such dog to chase after, run after, bark at, harass, annoy, vex, tantalize, frighten, and interfere with running animals, and especially running horses, and that the members of said family had knowledge of the trait and tendency of such dogs and the particular dog in question. That on the 10th day of October, 1907, the plaintiff was lawfully upon the fair grounds and racetrack, and was engaged in the lawful business of riding horses in race contests and exhibiting the speed of horses in speed contests, and at such time had an earning capacity of, and was earning in his said occupation, the sum of $1,000 per month; that on said day said dog was by its owners, harborers, keepers, and masters permitted to accompany members of the family of John P. Vollmer to, and to be taken to and upon, the fair grounds controlled and operated by the fair association, and that the persons who accompanied said dog were the immediate family and children of said John P. Vollmer—that is, Norma and Norman Vollmer. That at the time such dog was taken upon the grounds of the fair association by the children of said John P. Vollmer they were informed by the track and ground policemen of the fair association and the gatekeeper, at the time of entering the grounds, that it was not permissible to allow loose dogs to be taken in and upon the premises, and were cautioned of the danger thereof; and that notwithstanding such notice the fair association and the members of the family of said John P. Vollmer permitted said dog to be taken upon such grounds and to run loose and unrestrained over and across the racetrack, thereby creating great danger to horses entered in speed contests and the riders of such horses, and that said fair association and the members of the Vollmer family knew of such danger; that it is the rule and custom of fair associations exhibiting speed contests, and was the rule of such association, to exclude from the fair grounds, and especially the racetrack, all loose animals and all animals except those engaged in the race, and that the defendants knew of this rule or custom. That on said day, while the plaintiff was lawfully engaged in riding in speed contests upon the track,

the defendants wrongfully, recklessly, carelessly, negligently, wantonly, and with utter disregard of the safety of the various riders of horses engaged in such speed contests, and more particularly of the rights and safety of the plaintiff, permitted said dog to trespass upon and run upon, over and about the home stretch of the racetrack, and while plaintiff was riding in such races and was upon the home stretch of said track, the said dog was by said defendants, and each of them, wrongfully, recklessly, wantonly and carelessly permitted to run loose and unrestrained, and to molest, interfere with, and run against the horse and come in contact with the horse ridden by the plaintiff with great force and violence, causing said horse to stumble and fall, by which the plaintiff was precipitated with great force and violence upon the track and rendered unconscious; and immediately thereafter another horse in the same race which was closely pursuing the horse ridden by the plaintiff was caused to run against and strike the horse ridden by plaintiff, and such horse was violently thrown upon the body of the plaintiff as he lay upon the track; that at the time of such accident the plaintiff was exercising due care and caution and that there was nothing to indicate to him that any mishap would happen, and that the injuries received were without contributory negligence on his part and were not due to any vicious habits of the horse on which he was riding, but were caused solely by the negligence of the defendants. That by reason of such accident the plaintiff was greatly injured and bruised, his right leg broken, the right hip bruised, and wrenched, his back damaged, and as a result suffered great pain and anguish. That prior to such injury and at the time thereof he was in good health, and had the free and perfect use of all of his faculties and members of his body, and had exceptional skill and ability as a rider in speed contests, and had established for himself a business in winning premiums offered for speed contests, and had established a reputation and fixed a value on his services for the racing season of 1907 of the reasonable value of $12,000; that by reason of such injuries he has been deprived of his

occupation for the seasons of 1907 and 1908, has been permanently disabled and disqualified from pursuing such business, for which he demanded judgment.

To this complaint the appellants, Norman Vollmer and John P. Vollmer, filed a motion to strike, and the overruling of this motion is assigned in this court as error.

The motion was first directed against paragraph 2 of the complaint. In this paragraph the plaintiff alleged the dates between which the fair association was holding its fair in the year 1907, and that during such fair the plaintiff was requested and invited to ride horses in speed contests given under the auspices of said association. The appellant contends that this allegation was redundant, surplusage, irrelevant and immaterial. This objection is not well taken. This allegation properly alleged the fact that the fair association was holding a fair in accordance with the purpose and objects of its organization, and that the plaintiff was there rightfully by the fair association's invitation and engaged in a lawful occupation at its solicitation and request.

The motion was also directed to paragraph 3 and a specific part thereof. These allegations dealt with the relationship of the family of John P. Vollmer to the dog which it is alleged caused the injury, and the habits and disposition of dogs of the class and the particular dog under consideration. These allegations were proper, as it was necessary to allege and show the relationship of the parties to the dog; and while if the injury occurred while the dog was a trespasser, it might have been immaterial as to the habits and traits of dogs of that class and the dog in particular, yet all these facts had a tendency to show the negligence of the defendants in permitting said dog to go upon the fair ground and racetrack.

The motion was also directed to paragraphs 5, 6, 7, and 8 of the complaint. These allegations relate to the relationship of the defendants to the dog in controversy, their taking the same upon the track, their being notified by the track and ground policemen, the gatekeeper, that dogs were not permissible upon the premises, and being cautioned of the

danger and the knowledge the fair association had of the fact that the dog was permitted to be taken upon the fair grounds, and the fact that the defendants permitted said dog to run loose and unrestrained upon such grounds, and that by so doing there was great danger from such dog coming in contact with, or interfering with, the horses engaged in the speed contest, and the regulation of the association as to not permitting dogs to be taken upon the track. These facts were all pertinent as showing the acts of the parties with reference to the circumstances under which the injury occurred, from which the liability must be determined, and are proper and necessary allegations in an action of this kind.

The motion is next addressed to paragraph 9. This paragraph contains the allegations with reference to the incidents immediately attending the accident and a description of how the accident occurred by the dog going upon the racetrack in front of the racing horses and coming in contact with one of the animals, which fell and threw the plaintiff, which resulted in the injury complained of. These allegations were certainly proper, and of the very essence of the plaintiff's right to recover if such right existed.

The motion is also addressed to paragraph 13. This paragraph relates to the allegations of good health and physical condition of the plaintiff and his skill and ability as a racehorse rider, and the wages he was earning as such. These allegations were proper, as such matters were proper for the consideration of the jury in determining the amount of recovery to be awarded to plaintiff, if any. (13 Cyc., pp. 47, 48.)

The motion is also addressed to paragraphs 14 and 15. Paragraph 14 contains the allegation of the value of the services of McClain for the year 1908; while paragraph 15 contains the allegations that the injuries sustained deprived the plaintiff of his occupation and permanently disabled him. These were all proper matters to allege, and to support which evidence might be offered in order to determine the amount of recovery, if any, to be allowed plaintiff. The

trial court committed no error in sustaining the motion to strike. (13 Cyc., pp. 47, 48, 141.)

A demurrer was also filed to the complaint by the defendants Vollmer and also the fair association, which demurrers were overruled by the trial court, and this ruling is also assigned as error. The two specific grounds of demurrer, which require further consideration in addition to what has been said with reference to the motion to strike are, that the complaint is insufficient because it does not allege where the injury occurred, whether in the state of Idaho or the state of Washington; also that there is a misjoinder of parties in that John P. Vollmer and Norman Vollmer are, improperly joined as defendants with the fair association, in that no concert of action between the defendants is shown and no facts plead to show the defendants liable as joint tort-feasors.

The complaint should have alleged the place where the injury occurred, in order to give the defendants an opportunity to set up any defenses which might arise by reason of the law of the place where the injury occurred, but in this case the defendants have cured such error by answering the complaint and setting up the place where the injury occurred. Had the defendants desired to avail themselves of this defect in the complaint, they should have rested upon the court's ruling upon the demurrer or not have plead such facts as a defense. Having answered and thus plead such defenses as arose by reason of the law of the place where the accident occurred, they have not in any way been prejudiced. (*State v. Thum,* 6 Ida. 323, 55 Pac. 858.)

As to the misjoinder of defendants, we think the facts alleged in paragraph 9, to which reference has heretofore been made, charge especially that the defendants wrongfully, recklessly, carelessly, negligently, wantonly, and with utter disregard of the safety of the various riders engaged in such speed contest, permitted said dog to trespass upon and run upon, over and about the said racetrack, etc. This paragraph specifically alleges the liability of the defendants as joint tort-feasors. The wrong complained of is alleged to have been joint. The defendants jointly are charged with

the unlawful, reckless, careless and negligent permission of the dog to go upon the track and interfere with the plaintiff, who was rightfully there. The trespass particularly alleged and complained of is not that of a trespass upon the close or the real property, but a trespass against the rights of the plaintiff—an interference with his legal right; and the allegations show that the defendants are alleged to have acted in concert or by unity of action in permitting such wrongdoing. There was no misjoinder of parties defendant. (*Tompkins v. Clay Street Hill R. Co.,* 66 Cal. 163, 4 Pac. 1165; 1 Cooley on Torts, pp. 238, 244.)

Under the general ground of the demurrer many questions are presented by counsel for appellant, some of which deal with the merits of the case; and in discussing such questions we shall do so with a view of applying such discussion to the merits of the case in so far as the same may be applicable. It is argued by the appellant that the complaint fails to state a cause of action because of the failure to allege that the dog in question was accustomed to do or possessed the trait of doing the particular act, or similar acts to those alleged in the complaint, and that the defendants had knowledge that such dog possessed such trait. While counsel for respondent contends that the dog being a trespasser as to the plaintiff's rights and unlawfully in the place where the accident occurred, and the injury being the direct result of such trespass, it is of no consequence whether it be alleged or shown that the appellants had previous knowledge of the traits or habits of such dog which led it to commit the wrong complained of.

The argument of counsel for appellant is based upon the principle of law announced in the case of *Ward v. Danzeizen,* 111 Ill. App. 163, and cases in line with that principle as follows:

"The owner of domesticated animals is not liable for injuries done by them, unless he is proved to have had notice of the inclination of the particular animal complained of to commit such injuries, there being no presumption that animals of that species are vicious or dangerous."

This principle of law may be conceded to be correct as applicable to the facts of that particular case, but it will readily be observed that this action is not based upon the theory that the plaintiff was injured by a vicious or dangerous domestic animal of which the owner had knowledge, but is based solely upon the theory that the animal causing the injury at the time of the accident was a trespasser as to the legal rights of the plaintiff. The error of counsel for appellant has arisen by reason of the failure to distinguish between that class of cases wherein it is alleged that the animal doing the injury was a trespasser, and that class of cases wherein it is alleged that the animal doing the injury was of a vicious or dangerous character.

One of the early cases in this country considering the legal principles involved in the case at bar, under the facts as alleged in the complaint, is that of *Decker v. Gammon*, 44 Me. 322, 69 Am. Dec. 99, and in our opinion states the rule correctly as follows:

"If domestic animals, such as oxen and horses, injure anyone, in person or property, *if they are rightfully in the place where they do the mischief*, the owner of such animals is not liable for such injury, unless he knew that they were accustomed to do mischief. And in suits for such injuries, such knowledge must be alleged, and proved. For unless the owner knew that the beast was vicious, he is not liable. If the owner had such knowledge he is liable."

"The owner of domestic animals, *if they are wrongfully in the place where they do any mischief*, is liable for it, though he had no notice that they had been accustomed to do so before. In cases of this kind the ground of the action is, that the animals were wrongfully in the place where the injury was done. And it is not necessary to allege or prove any knowledge on the part of the owner, that they had previously been vicious."

This case clearly draws the distinction between that class of cases cited by counsel for appellant and that class of cases coming under the allegation of the complaint in this case. Where it is alleged, as in the case at bar, that the

animal is wrongfully at the place where the mischief is done, the owner is liable for the damage done, if any, although he had no notice that such animal possessed the trait or characteristic of doing the particular thing which caused the injury. The right of action arises by reason of the fact that as against the plaintiff the animal causing the injury is a trespasser, is unlawfully at the place where the injury occurs and at which place the plaintiff has a legal right to be. So in the case at bar the allegations of the complaint are to the effect that the plaintiff was invited by the fair association to engage in riding a race upon the grounds controlled by the fair association and at a time when the fair association was conducting its fair, thus clearly showing the plaintiff to be a licensee upon the racetrack at the time the accident occurred. Then follow the allegations that the defendants unlawfully, wrongfully, negligently and wantonly permitted the dog in controversy to go upon, run over such racetrack and come in contact with the horse ridden by the plaintiff, which occasioned and caused the injury for which damages are sought. Under these facts it was not necessary to allege or prove any particular trait or characteristic of the dog, or that the defendants had knowledge that such dog, or the class of dogs to which the same belonged, possessed any peculiar trait or characteristic, or the trait or characteristic which led it to the place and to do the act which caused the injury. (*Decker v. Gammon,* 44 Me. 322, 69 Am. Dec. 99; *Chunot v. Larson,* 43 Wis. 536, 28 Am. Rep. 567, 2 Cyc. 373; 1 Thompson on Neg., 888.) These authorities seem to be in line with the reason of the case.

There would seem to be no reason why the owner of a dog, who unlawfully and negligently permitted trespass upon the rights of another and to go upon the premises where such animal had no right to be, and to invade the legal rights of another, and, while such trespasser, commits an injury to the person or property of one whose rights have been invaded, should not be liable for such damages. If A should, without right or authority, turn a horse into the field of B and while there such animal should kill a horse belonging to B,

A certainly would be liable for such damages. If an owner of a dog takes such animal upon the premises of another, and while there such animal bites a child or overturns a table and thereby injures the child, or does any other injury to life or property while wrongfully on such premises, there would seem no reason why the owner of such dog should not be responsible for the damages done.

We think it would readily be admitted that if, instead of a dog, the animal had been a horse or cow, there could have been no question about the owner's liability for an injury occasioned under the facts alleged in the complaint, and the mere fact that the animal was a dog does not relieve the owner of the damages sustained. It is true the early courts, dealing with the question of trespass of a dog, held that a different rule applies to that of other domestic animals, and that the owner of a dog, independent of statute, was not generally liable for an injury committed by it when trespassing, unless he had previous knowledge of its vicious propensities. (2 Am. & Eng. Ency. of Law, 368.) But we are unable to discover any reason for this rule, or why dogs should be placed under a different rule than other domestic animals, as to the owner's liability for injuries done when trespassing.

The dog is generally recognized as an essential part of every well-regulated family, and of a higher degree of intelligence than other domestic animals, and given privileges not generally conceded to other members of the animal family. But we are inclined to the opinion that notwithstanding this fact, and notwithstanding the fact that the dog occupies a higher position in the social world of the animal family, and an important one in human affairs, still that the owner of such animal should not be excused from liability for injuries done by the dog when invading the rights of person or property. This position that the dog has well earned, by reason of his heroic acts and deeds of valor, might be a reason for exacting from the owner a higher duty as to responsibility for the dog's acts, but it certainly is not a reason why the owner of such animal should not be equally

responsible for the wrongs done by a dog as for wrongs done by other domestic animals. And we believe, both upon reason and authority, that when a dog invades and trespasses upon the legal rights of a person and injures person or property, and such invasion and trespass is the result of the negligence of the owner, the owner is liable for the damages done.

In this case the complaint alleges that the plaintiff was the licensee upon the track; that he was there by invitation of the fair association; that the defendants wrongfully permitted the dog in question to invade the rights of the plaintiff as such licensee. Under these facts the plaintiff had a right to assume that he would be protected as such licensee in his legal rights; that the defendants would in no way place a danger in his way, and when the defendants, as it is alleged, took the dog on to the fair ground and to the race, they did so at their own risk. It certainly was not for enjoyment that might come to the dog, by reason of witnessing the contest to take place, but merely for their own pleasure in having the companionship of such animal while witnessing the speed contest.

We are not aware of any particular trait in the dog which indicates his mental capacity to derive any especial pleasure from witnessing a speed contest by horses, or that speed contests are given for the edification or pleasure of the dog family. We do not believe that a racetrack, while races are in progress, is a safe place for dogs. They do not necessarily possess that degree of intelligence possessed by the human family which would cause them to not go upon the track or interfere with the race, and the knowledge of the owner that the dog does not possess such intelligence implies at least the duty on the part of the owner not to take the dog to such a place. So we conclude in discussing this particular feature of the case that the allegations of the complaint are sufficient to state a cause of action; that it was not necessary to allege or prove that the dog causing the injury possessed vicious habits or traits which would lead the dog to do the wrong complained of in the complaint, or

that the defendants had knowledge that such dog possessed such traits. An examination of the complaint, however, in this respect shows that it is alleged that the dog in question possessed the trait, disposition and propensity to interfere with horses running in a race, or belonged to the class of the chase, and that the Vollmer family had knowledge that such dog possessed such traits and belonged to the family of dogs known as "the dog of the chase." These allegations were proper as bearing upon the question of negligence. From this discussion we are led to the conclusion that the complaint states a cause of action and that the demurrer should be overruled.

The defendants answered the complaint and in effect denied the allegations thereof, and plead as a second defense that the racetrack and fair grounds described in the complaint were situated within the county of Asotin, state of Washington, and within the corporate limits of the city of Clarkston; that at the time it is alleged the plaintiff received his injuries there was in force in the state of Washington certain statutory provisions concerning gambling and the recovery of damages for money lost by reason thereof. That on and prior to the day of the accident the fair association had granted and sold a gambling privilege and license to persons, authorizing them to conduct a game of chance and gamble upon the result of the races run upon the ground, and had arranged for the gathering of an assemblage of people, and had offered inducements to persons to assemble for the purpose of causing people to gamble, and invited and permitted persons to gamble upon the result of the races; and that large amounts of money were won and lost every day and upon the particular race in which plaintiff received his injury, all of which was known to the plaintiff and to his father and guardian, and that the plaintiff was a part and parcel of the gambling device, and aided and abetted and assisted in the same and at the time of the injury was aiding and abetting in the commission of a felony in violation of the laws of the state of Washington; that the plaintiff prior to riding in the particular race described in his complaint

entered into a contract, which was in force at the time of the accident, and that such contract was in violation of the anti-gambling statutes of the state of Washington and the statutes of Idaho concerning gambling and gambling devices; and that the plaintiff knew at the time of riding said race that such contract was in violation of the common law and the statute of the state of Washington and also Idaho; that at such racetrack the plaintiff, as a jockey and rider, participated in the race and in the gambling thereupon, and there was wagered in a bet large sums of money thereupon, and the plaintiff permitted and induced persons to solicit others to patronize the poolrooms, gambling privileges and devices, and gamble their money on the result of said race. To this separate answer the plaintiff filed a general demurrer, which was sustained by the trial court, and the ruling of the court is also assigned as error.

We have carefully examined the statute of the state of Washington plead as a defense, and are unable to discover therein any provision which applies to racetrack gambling or makes the running of races for purses gambling, or the betting of money on the result of a horserace gambling. The statute plead refers to certain games played with cards, dice, or any other device, whether the same be played for money, checks, credits, or other representative of value. The statute nowhere deals with the question of racetrack gambling or in any way makes the wager of money upon the result of a race gambling. But even if it be conceded that the wager of money upon the result of a race is gambling, still it would not be a defense in this case, for the reason that the injury complained of was not because of the betting upon the race, but was independent and disconnected with the betting feature.

The allegations of the complaint show the accident occurred in a race, in a contest of speed in which the plaintiff was a rider, and not while the plaintiff may have been wagering money upon the result of the race. The wager of money upon the result was entirely disconnected, and a different act from that of the race in which the accident occurred.

The injury was the result of an extraneous act entirely dis-
connected with the betting feature, and was not the result
of any effort to suppress a violation of the law.  In per-
mitting the dog to go upon the track the defendants were
in no way attempting to enforce the law or prevent its
violation, or justified such trespass in order to prevent or
suppress a violation of the law.  The fact, even if it be con-
ceded that the plaintiff was a wrongdoer in riding in a race
upon which money had been wagered, would not justify the
defendants in injuring him, when such injury was not the
result of an effort to suppress such wrong or enforce the law.
Neither would it deny the plaintiff the right to recover
damages sustained by him in the race, caused by the negligent
acts of the defendants in interfering with such race.  (*City
of Pueblo v. Smith,* 3 Colo. App. 386, 33 Pac. 685; *Newcomb
v. Boston Protective Dept.,* 146 Mass. 596, 4 Am. St. 354,
16 N. E. 555.)

During the trial the plaintiff was asked this question:
"Will you tell the jury how you suffered or whether you
suffered greatly over this injury or not?"  This question
was objected to, and it is now argued by counsel for appellant
that the trial court erred in permitting the witness to answer
this question because it called for a conclusion and not a
statement of the facts.  In this we think counsel is in error.
When the witness was asked to describe his suffering, it
was not calling for a conclusion of the witness, but a state-
ment of a fact, susceptible of description, the same as any
other fact.  It is common knowledge that the physician must
largely depend upon the statement of the patient as to the
location, extent and character of the suffering in order to
determine the nature and extent of the injury, and we are
not aware of anyone who is in a better position or possesses
any greater inside information upon the subject than the
patient himself, or who would be better able to describe
or know the character and extent of the suffering than the
patient himself.  As physical suffering is an element of
damages recoverable in such actions, it was proper to submit
evidence with reference thereto.  (*Missouri K. & T. Ry.
Co. v. Miller,* 25 Tex. Civ. App. 460, 61 S. W. 978.)

Other questions were asked the witness which in effect called for a description from him of his suffering and how he was affected by such injury in the way of pain; and we find no error in the trial court permitting such evidence. In actions of this kind great latitude is allowed in the introduction of evidence to aid the jury in determining the extent of the damages sustained by the plaintiff. (13 Cyc. 194.) The plaintiff was also asked as to his physical condition prior to the accident and his power of endurance, and also the result of an effort on his part to perform work after the accident. The same objection is made to this evidence, and we are of the opinion that the counsel has also fallen into the same error—that is, that the evidence offered is not as to the conclusion of the witness, but evidence describing conditions, physical facts, which, and from which, only, can the jury intelligently determine the nature or extent of the injuries sustained.

It appears from the evidence that after the plaintiff had partially recovered from the injury he attempted to take exercise in order to reduce his flesh to that required in his business or profession as a racetrack rider; and he was asked what exercise he would have to go through in order to get back to his riding weight. In answering this question the court permitted the witness to state what efforts the plaintiff had made to reduce his weight and the result. This evidence was proper, as it related to the extent of damages sustained by the plaintiff and the permanent nature thereof. The witness was also asked; "Do you know how much money you were earning for yourself at the time of the injury?" Objection was made to this question upon the ground that it was irrelevant and immaterial, and because the witness was a minor and can recover no compensation for his services prior to maturity, and also upon the ground that the plaintiff was engaged in an unlawful act, to wit, gambling, and cannot recover any damages while so employed. As to the plaintiff's business and his right to recover by reason thereof, this opinion has fully discussed. As to the earning capacity of the plaintiff at the time of the accident, it would seem there

could be no reason why this may not be shown to be considered by the jury in determining the amount of recovery, as it is upon this class of evidence largely that the jury must reach their conclusion as to the amount to be awarded plaintiff as damages.   (13 Cyc. 202.)

We think it may be conceded that a minor cannot recover compensation for impaired capacity to pursue the ordinary vocations of life prior to his majority, unless it be alleged and proven that he has been given his liberty, that his parents do not claim the right to receive such compensation.   In this case it does not appear that the parent has ever waived the right to receive the earnings of the plaintiff during his minority, and under the rule as we understand it the plaintiff could not recover damages by reason of his capacity to earn during his minority being impaired.   But an examination of the question will at once suggest that this objection does not arise out of the question.   (Watson on Damages for Personal Injuries, sec. 491; 16 Ency. Pl. & Pr. p. 468.)   An examination of the instructions discloses that the court so instructed the jury.

The question was proper as a basis for determining the damages to be awarded to plaintiff after his majority, and in no way limited the inquiry to the damages during the plaintiff's minority.   The objection made to the question did not apply to the question, as the question did not imply any claim on the part of the plaintiff for damages during his minority.

A number of questions were asked the witness with reference to his earning capacity as a rider and what record, if any, he possessed from which he could refresh his memory as to his earning power as a jockey; and after testifying to his ability and power to earn money and the record or "dope" book, as it was by him called, from which he was able to refresh his memory as to his earning power, he was asked this question: "And based upon that you state your earning capacity is as you have stated?"   It is objected by counsel that this question is leading and suggestive, and as proof of damages was too speculative.   The question is somewhat

speculative, as it directs the witness' attention to the premises upon which he is to determine his earning capacity, but the question asked the witness only to do that which already appears from the evidence. As has been shown by the witness' testimony, he had already stated his earning capacity, the wages he was receiving, etc., and it followed from such statement that his earning capacity was a certain sum, and the question merely directs the witness' attention to evidence already given and asked the witness if it is upon that, that he has stated his conclusion.

A number of alleged errors are assigned arising out of objections made to leading questions. While counsel should at all times avoid the asking of leading questions and permit witnesses to state facts without any suggestion from counsel as to the answer to be given, yet such questions are within the discretion of the trial judge, and sometimes the facts can be more readily and speedily developed by asking leading questions without seriously prejudicing the rights of the party objecting thereto, in which case, where the discretion of the court is not abused, this court will not reverse a case because of leading questions. In this instance, however, we do not think leading questions were necessary, but we do not believe that the case should be reversed because such questions were allowed, because the answer given by the witness had already appeared by other testimony given. The proof offered was not necessarily of a speculative character, because the witness was testifying from a record as to what he had previously earned; and it was from that that he was determining his earning capacity. This was not speculative any more than any other evidence as to what a person engaged in any particular business may have been earning as a basis for the conclusion as to future earnings. In this instance it was the only evidence which the plaintiff could produce from which the jury might conclude as to his earning capacity, both in the past and for the future.

Counsel for appellant also contend that the court erred in permitting the plaintiff to answer this question: "Have you been able to follow your business as a jockey since you were

hurt, Bennie?'' It is argued that inasmuch as the court struck out the defense relative to the business in which the plaintiff was engaged, that it was error for the court to admit any evidence tending to show the plaintiff's earning capacity by the pursuit of such business. We have previously dealt with the question of whether or not the plaintiff's business, as alleged in the complaint, was unlawful, and it would seem very proper and essential for the plaintiff to testify as to whether or not he was able to follow his business after the injury, because from that the jury must conclude as to the extent of damages sustained. What is here said also applies to several other questions in relation to the plaintiff wagering money upon the result of races generally, and the particular race in which the accident occurred.

A motion was made by counsel for appellant to strike out all of the evidence relative to plaintiff's earning capacity, what he was earning at the time, upon the ground that the contract was the best evidence. This motion is predicated upon the disclosure made by the witness upon cross-examination that he was under contract with one W. M. Kane for his services, from whom he was getting $20 a month; and that such contract was in writing. The motion, it will be observed, is directed to all evidence with reference to the plaintiff's earning capacity, not alone to the matter covered by the contract. All evidence outside of the contract with reference to the plaintiff's earning capacity was a matter which was entirely proper and was not governed by a written contract. The witness testified that he earned the money from the outside mounts and not from the man he was working for; that he was paid so much for a losing mount and so much for a winning mount, and it was in this method that his earnings were principally made. And the motion going to the entire evidence was properly overruled by the court.

On cross-examination the witness was asked this question: ''I will ask you if you didn't state to a lady at the hospital during the time you were in the hospital, Miss Genevieve Vollmer, herself and yourself and the nurse or sister who was waiting on you being present and none others, that you

didn't blame anyone for the dog being on the track, or for your accident, that the children didn't know the dog was there, or words in substance and to that effect?" To this question counsel for plaintiff objected on the ground that it was immaterial, irrelevant, improper, or not proper examination or impeaching matter, which objection was sustained by the court; and this is alleged as error. While the question should have been allowed, we see no prejudicial error in the ruling of the trial court. Whether the plaintiff blamed anyone for the dog being on the track or for his accident, or that the children did not know the dog was there, could make no difference as to the plaintiff's right to recover; and the fact that he made such statement, if it were made, would not prevent his recovering damages if it turned out that the facts showed a legal liability on the part of the defendants for such damages.

Numerous other objections are urged against evidence permitted upon behalf of the plaintiff in relation to the plaintiff's effort to do work after the injury and the preparation necessary in preparing himself to ride as a jockey and the condition in which a jockey must be; and we think all this evidence was entirely proper; it had to do with the plaintiff's condition after the accident and the training and care necessary to prepare one to ride as a jockey, and enlightened the jury as to the skill of the plaintiff, and thereby aided them in determining the extent of damages sustained by him by reason of the injury, and we find no error in the trial court admitting such proof.

On the cross-examination of the witness Mounce, a witness for plaintiff, counsel for the fair association asked the witness this question: "Do you want this testimony to stand that that accident happened within fifteen feet of the entrance to the paddock?" Objection was made to this question because not proper cross-examination and sustained, and this is alleged as error. The witness had testified to the place where the dog went onto the track and the distance of the gate leading to the paddock from that point, and this inquiry merely asked the witness if he desired his evidence

to so stand.  We can see no objection to the witness answering this question, as it appears from the record that he immediately thereafter proceeded to reiterate the very same fact, and while the question was proper, we cannot see how the appellants were in any way prejudiced by the ruling of the trial court in sustaining the objection, as the witness had previously stated such to be the facts.

Fred H. Wood, who served as judge for the fair association and was so serving at the time the accident occurred, was asked this question: "When you saw the dog, what exclamation or command did you give?"  Objection was made to this question as incompetent, irrelevant and immaterial. The court permitted the question to be answered because made at the time of the accident and because Mr. Wood was an officer of the fair association.  The witness answered: "My God!  Fellows, look at that dog!"  We think the inquiry implied by the question was proper, as it called for an expression from the witness of his knowledge that the dog was present and of its acts; but we think the answer of the witness should have been stricken out, as such exclamation was not evidence and in no way tended to prove the plaintiff's case or show any liability on the part of the defendant, but as such exclamation did not contain an opinion of the witness, but merely an exclamatory remark of what the witness saw, we do not believe that the appellants could have been prejudiced thereby.

G. W. Fuller, a witness for the plaintiff and an officer of the fair association, on the ground in the afternoon the accident occurred, and who was present immediately before the accident and who saw the accident, testified that the judge told him to kill the dog after the accident; and he took hold of the dog, and Mr. Vollmer's son and daughter claimed the ownership of the dog.  And, among other things, the witness was asked this question: "State whether or not any statement was made as to it being their dog or our dog."  This is objected to as leading and suggestive and the answer was: "They asked me what I was going to do with the dog, and

if I was going to kill him, and they begged me to not kill him, said they would take the dog, and take care of him." This inquiry was entirely proper, as it tended to show who was claiming to be the owner or harborer of the dog; and all evidence in relation to the ownership or who had control or harbored the dog was entirely proper and necessary in this action. And what is said with reference to this inquiry relates to a number of other objections made to questions. All statements made by the defendants as to their custody of the dog at the time of the accident, immediately preceding thereto, or generally, and also as to the ownership and harboring of such animal, were admissible to aid the jury in determining whether or not the defendants were the owners or harborers of such animal, and liable for damages done by such dog.

Questions intended to elicit the experience of the plaintiff as a rider in races and his ability were objected to, and it is now argued in this court that such evidence is irrelevant and immaterial and speculative. In this connection and as answer to this objection it is proper to observe that a party injuring another by a wrongful act is liable for all the direct injury consequent thereto, and in those cases where the injured party is a man of skill or has some particular trade or vocation, the fact that the value to be allowed as compensation for injuries to such person is difficult to determine is not a reason why all evidence which would tend to aid in arriving at proper compensatory damages should be excluded, but is a reason why great latitude should be allowed in offering evidence which will aid the jury in properly determining what is a proper compensation for such injury. (13 Cyc. 47-50.)

Objection was also made to the introduction of a certain photograph. This photograph, it seems, was offered for the purpose of showing the location of certain objects at the time the accident occurred, although it was not a photograph of the incident at the time. For the purpose for which such photograph was offered, we think the court did not err in admitting it.

Numerous other objections were made to questions asked different witnesses, all of which we have carefully examined, and find no error in the ruling of the trial court. Some questions were asked which were leading and suggestive and should not have been asked by counsel for the plaintiff; but we have not been able to find any prejudicial error in permitting such questions in this case. Counsel should be very careful about asking such questions and should always direct the inquiry to a statement of the facts by the witness and not suggest or place in the inquiry the answer to be made thereto. Many of these questions have also, in a general way, been treated and considered in the discussion of other questions in this opinion, and it would make the opinion unnecessarily lengthy to take up each particular objection and discuss it.

The next error assigned is that of overruling the motion of the defendant, Norman Vollmer, for a nonsuit made at the close of the plaintiff's case. This motion assigns eleven different grounds why the suit should be dismissed as to this defendant. Many of the grounds contained in the motion have been discussed in dealing with other questions. There are questions presented by the motion, however, which have not been dealt with and which we will consider. In a general way, the motion for a nonsuit is asked upon the ground that no negligence was proven on the part of Norman Vollmer, or that he was the owner or keeper of the dog at the time of the accident or was present at the time of the alleged accident, or that he took the dog to the racetrack or the fair ground or had any knowledge of the habit, trait, disposition or propensity of the dog to run after, harass, or annoy running horses, or was the owner of the dog at the time of the accident or had control of the same. Whether Norman Vollmer was the owner, harborer, or in control, was a question of fact to be determined by the jury under proper instructions. If Norman Vollmer took the animal to the fair, or knowingly permitted it to accompany him there, then he would be responsible for the dog's acts while at such place, whether he be the owner of such animal or not. In 2 Cyc.

379, the author has collated the cases bearing upon this question which seem to fully sustain the text, and the writer says:

"Harboring means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or keeper within the meaning of the law; but the casual presence of an animal on his premises, if not so treated, does not constitute him such owner or keeper. If the head of a family, having possession and control of a house or premises, suffer or permit an animal to be kept on the premises in this way, he may be regarded as keeper whether the animal be owned by his child or his wife."

So, in this instance, if the dog in question was harbored and kept about the family residence, where Norman Vollmer lived, and was permitted to follow him to the fair ground, and was with or about him near the racetrack, and under his control at the time and before the injury occurred, he may be regarded in control of such animal in so far as being liable for the injuries done by such animal in such place. Whether he was the owner or in control of such animal was a question of fact to be determined by the jury. On this matter the jury have found for the plaintiff. Norman Vollmer testifies that the dog belongs to his sister, Genevieve Vollmer, and that he has no interest in it, and that he had nothing to do with its care or keeping; that at the time the accident occurred Rolston Vollmer, his brother, drove over right by the side of the witness' horse; that Rolston Vollmer was standing right by the side of the witness' horse and was holding the dog by the collar; that the witness took the dog off the ground after the accident; that the three, the witness, Rolston Vollmer, his brother, and Norma Vollmer, his sister, were in a group and the dog was with them at the time the accident occurred; that the dog lived at their house and that the witness saw the dog after he got onto the fair ground.

It appears from other evidence that Norman Vollmer and Norma Vollmer, his sister, went to the fair grounds together, and that when they entered the fair ground they were accompanied by the dog and notified by the gatekeeper at the

time that they must take care of the dog, and they said they would take care of the dog. This latter evidence, however, is contradicted by the parties. We think, however, there is sufficient evidence to submit to the jury the question as to whether Norman Vollmer was in control or the keeper of the dog in a legal sense, so as to make him liable for damages occasioned thereby, and there being a conflict in the evidence and the jury having passed upon that question, this court will not disturb the verdict of the jury. Whether Norman Vollmer was negligent in taking the dog to the fair ground or permitting the dog to follow him to the fair ground and remain near the racetrack in the presence of a large assembly of people when a race was in progress was a question for the jury to determine from all the facts and circumstances surrounding the incident. We are convinced, however, from all the facts of this case that the jury were justified in concluding that it was negligence on the part of the defendant Vollmer in taking the dog to the racetrack and permitting the dog to remain near the racetrack while the race was in progress, without proper restraint or without being able to control the actions of the dog so as to prevent the dog going upon the racetrack and interfering with the race.

It is common knowledge that a speed contest between horses is for the entertainment and edification of the human family and not the dog family, and that, as a rule, large numbers of people gather near the racetrack and at which place there is excitement, jostle and push in the struggle for an advantageous position where the spectator may best observe the contest. At such place we think a dog should not be permitted to go, and especially should not be taken; and that a person, who takes or suffers a dog to be taken to such place, where an injury results from the acts of the dog, is guilty of negligence. Persons who are keepers and custodians of dogs are required to exercise proper judgment as to the place where the dog is taken and the position in which the dog may be placed, and are responsible for the acts of such dog; and when dogs are taken to a place not suitable or proper, or placed or suffered to be placed in a position where

they become a dangerous agency, and an injury results therefrom, we think a jury is warranted in concluding that the owner, harborer or person in control of such dog is guilty of negligence. In this case the conclusion of the jury in respect to such matter, we do not believe, should be disturbed. In a former part of this opinion we have discussed the question as to the knowledge of the appellants as to the traits or habits of the dog.

It is further argued in support of the motion for a nonsuit that it does not appear that the dog was crossing the track at the time of the race, and by this means came in contact with the horse, and that the injury was an accident and could not have been prevented. We think the evidence fully justifies the finding of the jury in this respect, and that the dog had no right upon the track at such time and that the injury was not purely an accident, but was the result of the negligence on the part of the appellant and those with him in permitting the dog to go upon the track.

The plaintiff was a licensee of the defendant fair association, and had a right to be upon the track. The dog was not a licensee but was there as a trespasser without right. The appellants must have known that the plaintiff had a right to ride upon such track and were there to witness such contest, and when they permitted or suffered the dog to go upon the track they thereby permitted a dangerous agency to be placed where the plaintiff had a right to presume safety. They could have avoided the accident by restraining the dog; they could have prevented the accident by leaving the dog at home, or by removing him from the grounds after they discovered he was there, even though they did not know that he followed them onto the ground. The evidence shows this dog to be a large greyhound, probably two feet and a half high, and it may readily be seen the danger which might result to a rider with an object of this dimension placed in his path. These were all questions that were proper for the jury to consider in determining the question of negligence.

It is also contended that the motion for a nonsuit should be sustained because there is a variance between the com-

plaint and the proof, in that the complaint alleges a joint tort, while the evidence fails to show a joint tort or any tort at all. We have discussed the allegations of the complaint with reference to the tort being joint, and we believe the proof is sufficient to warrant the jury in concluding that the defendants were guilty of negligence jointly in allowing the dog to go upon the track and to be at a place where it had no right to be, and at which the plaintiff had a right to presume safety.

. What has been said with reference to the motion for a nonsuit by Norman Vollmer applies also in a general way to the contention made by the fair association. The fair association had authorized and licensed the plaintiff to ride in a speed contest upon its ground. The evidence shows that it was a rule generally, and of this association, not to permit dogs upon the fair ground and especially the racetrack. The evidence in this case shows that the dog in controversy went upon the fair ground without any restraint upon the part of those in whose company he was or the fair association. The fair association knew the dog went upon the fair grounds and took no steps to restrain the dog or see that he did not become a dangerous agency, but relied upon Norman Vollmer and his sister to take proper care and properly restrain the dog. In such case the association was responsible for the acts of Norman Vollmer. Under all of these circumstances we are satisfied that it was the duty of the fair association not to permit dogs or any other dangerous agencies to go upon the racetrack where the plaintiff had a right to presume safety; and that it was negligence on the part of the association to permit the dog to go unrestrained upon the fair grounds and the racetrack, and the jury were warranted in concluding that it was negligence, and that they were liable as well as the other defendant for . the injury resulting from the acts of such dog.

Numerous errors are alleged in the giving of instructions on the court's own motion and refusing to give instructions requested by appellants. We have examined these different objections and find the court correctly stated the law to the

jury. Many of the objections made to the instructions are covered by the discussion in this opinion of other questions. We think the court correctly instructed the jury that if the defendant, Norman Vollmer, took the dog onto the fair grounds or permitted the same to follow him, knowing that horses were to race upon the track while said dog was there, and that said animal by nature was inclined to interfere with and run after horses; and that the defendant, Norman Vollmer, knew such fact, and that if he took the animal upon the grounds and failed to exercise such care and caution as a reasonably careful and cautious person would use under the same and similar conditions to prevent said dog getting upon said track or interfering with the running horses, and by reason of such want of care the dog went upon the track and caused the injury, such defendant would be liable.

The court further instructed the jury that if the defendant, Norman Vollmer, did not know of the presence of the dog until about the time the race, in which the injury occurred, was being run, and until Norman Vollmer was inside of the fair ground, and at the time the race was run the dog was with Norman Vollmer and was a dog kept about the premises of John P. Vollmer in which Norman Vollmer lived, then it was incumbent upon Norman Vollmer to use due care and caution to keep the dog off the track; and the fact that one Rolston Vollmer had his hand upon the collar of said dog would not alone and of itself mean that due care was being exercised, and under such conditions the fact that a race was being run, and the fact that dogs are likely to become excited and use strenuous efforts to get away and go upon said track, should be considered; and it must appear that such care and caution was taken as would reasonably prevent the dog getting upon the track; and it was for the jury to determine whether the dog entered upon the track with the knowledge of Norman Vollmer or without his knowledge, and if said Norman Vollmer permitted the animal to go with him to the track or remain with him after being upon the track, and failed to use reasonable care and caution as a reasonable, prudent and cautious person would do, under

the same or similar conditions, and the dog did enter the track and cause the injury, then the defendant Vollmer would be guilty of negligence regardless of whether he was the owner of the dog or not, correctly states the law as to the liability of an owner, harborer, or person in control of domestic animals.

The court also told the jury that they must determine from the evidence under the law whether either or both of the defendants were negligent, or whether either or both of the defendants exercised reasonable care and caution fairly and impartially, solely from the testimony before them; and in determining the amount of damages the law allows such amounts as will reasonably compensate the plaintiff for the injuries sustained; that the damages were purely compensatory for the loss of time and the physical and mental pain and suffering undergone and expenses; that nothing should be allowed as punishment for causing the injury, and that the plaintiff could not recover either for medical services or for diminution of earning power during his minority. These instructions we think clearly define the defendants' right under the circumstances, and the measure of damages to be awarded, and we believe, in effect, cover all of the questions embraced in the instructions asked by the defendants, and correctly gave the law to the jury.

We have carefully examined all the alleged errors presented by the record and find no grounds for reversing the judgment. Judgment *affirmed.* Costs awarded to *respondent.*

Sullivan, C. J., and Ailshie, J., concur.