542

961 P.2d 633

**Saiid DABESTANI as guardian for Soheil Dabestani, an incapacitated person, Plaintiff–Appellant,**

v.

**Murt Parmor BELLUS and Avonmore West, Inc., Defendants–Respondents.**

No. 23509.

Supreme Court of Idaho,
Twin Falls, March 1998 Term.

June 24, 1998.

Rehearing Denied June 24, 1998.

Jeff R. Stoker, Twin Falls, for appellant.

Evans, Keane LLP, Boise, for respondents. Rex Blackburn argued.

Substitute Opinion the Court's Prior Opinion Dated May 4, 1998 is hereby withdrawn.

JOHNSON, Justice.

This is an automobile accident case. We grant a new trial.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Soheil Dabestani (Dabestani) was traveling southbound on U.S. Highway 93 (the highway), approximately seven miles south of Twin Falls, Idaho, just after midnight when he came upon a milk tanker truck and trailer (the truck), driven by Murt Parmor Bellus (Bellus) and owned by Avonmore West, Inc. (Avonmore), stretched across both lanes of the roadway from the driveway of the Delaney Dairy (the dairy). Bellus was in the process of backing the truck into the dairy. Dabestani, whose blood alcohol concentration showed he had been drinking, was unable to stop in time. His vehicle went under the left side of the truck, causing him severe injuries that have incapacitated him.

Dabestani's guardian (the guardian) sued Bellus and Avonmore (the defendants) on Dabestani's behalf. After a trial on the issue of liability only, the jury found Dabestani fifty percent negligent, Avonmore forty percent negligent, and Bellus ten percent negligent. The guardian asked the trial court to grant a judgment notwithstanding the verdict (j.n.o.v.) or in the alternative a new trial, both of which the trial court denied. The guardian appealed.

## II.

## THE GUARDIAN IS NOT ENTITLED TO A J.N.O.V.

The guardian asserts that the trial court should have granted a j.n.o.v. We disagree.

A j.n.o.v. is simply a delayed motion for a directed verdict. I.R.C.P. 50(b); *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). A party moving for j.n.o.v. must admit the truth of the other party's evidence and this evidence must be viewed in the light most favorable to the other party. *Id.* In reviewing a trial court's ruling on a motion for j.n.o.v., we must determine whether or not "there can be but one conclusion as to the verdict that reasonable minds could have reached;" that is, whether there is substantial and competent evidence justifying the verdict. *Id.* at 764, 727 P.2d at 1192.

Considering as true all the evidence presented by the defendants and viewing this evidence in the light most favorable to the defendants, we conclude that there is substantial and competent evidence to support the jury's verdict that Dabestani was fifty percent responsible for the accident.

## III.

## THE GUARDIAN IS ENTITLED TO A NEW TRIAL

The guardian asserts that he is entitled to a new trial. We agree for several reasons.

### A. Lack of Safety Committee Meeting by Avonmore After the Accident.

The guardian asserts that the trial court should not have prevented cross-examination concerning the lack of a safety committee meeting by Avonmore after the accident. We agree.

There was no safety committee meeting held by Avonmore following this accident. Bellus's supervisor (the supervisor) testified that it was standard procedure for Avonmore to hold a safety committee meeting whenever a driver indicated that he was not at fault for a given accident but that no safety meeting would be held if a driver admitted fault. The trial court would not permit cross-examination to explore the issue further, ruling that it was irrelevant and would result in allowing the jury to make an impermissible inference. We conclude that the absence of a safety committee meeting is significant circumstan-

tial evidence that Bellus admitted to Avonmore that he was at fault in the accident. The nonexistence of a safety committee meeting is relevant because it tends to make the existence of the liability of the defendants more probable.

Although in its oral ruling from the bench the trial court only addressed the relevancy of this evidence, in its written order the trial court mentioned both irrelevancy and unfair prejudice under Idaho Rule of Evidence (I.R.E.) 403. The written order is the final order pursuant to I.R.C.P. 16(f). *See Ross v. Coleman Co., Inc.,* 114 Idaho 817, 837–38, 761 P.2d 1169, 1189–90 (1988) (determining that since no written order was ever issued, the trial court could overrule its initial oral ruling on the motion in limine by a subsequent oral ruling). Therefore, we must review the discretionary aspect of this I.R.E. 403 ruling by the following three step test:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In the trial court's conclusory statement in the written order, no reasoning is mentioned for the ruling concerning I.R.E. 403. Therefore, the trial court abused its discretion in making this ruling.

The trial court should have permitted cross-examination concerning this issue.

In *Hake v. DeLane,* 117 Idaho 1058, 793 P.2d 1230 (1990), the Court said: "An error in the exclusion of evidence is not grounds for granting a new trial unless refusal to do so is inconsistent with substantial justice. We will disregard the error if it does not affect the substantial rights of the parties. I.R.C.P. 61; I.R.E. 103." *Id.* at 1065, 793 P.2d at 1237. Because the jury found that responsibility for the accident was equally divided between Dabestani on one side and Bellus and Avonmore on the other, this evidence could have been critical for the jury to consider. We conclude the error affects Da-

bestani's substantial rights and is grounds for granting a new trial. I.R.C.P. 61; I.R.E. 103(a).

**B. The Trial Court Should Have Permitted Cross-examination of the Defense's Accident Reconstruction Expert Concerning Bellus's Statement to an Insurance Adjuster.**

■ The guardian asserts that the trial court should have allowed cross-examination of the defense's accident reconstruction expert (Blotter) concerning Bellus's statement to an insurance adjuster. We agree.

■ Bellus provided a statement concerning the accident to the insurance adjuster for Avonmore (the adjuster). The trial court correctly ruled that this statement was work product and free from discovery. The record does not disclose what Bellus told the adjuster. The guardian determined through discovery that Blotter was not provided with a copy of Bellus's statement to the adjuster. Blotter based his opinion concerning causation for the accident on his review of the police report and accompanying statements, depositions, views of the scene, and views of the vehicles. The trial court would not permit any cross-examination concerning Blotter not having been provided Bellus's statement to the adjuster. Opposing counsel is entitled to question an expert on "the underlying facts or data [giving rise to the expert's opinion] on cross-examination." I.R.E. 705. This permits cross-examination concerning which materials the expert relied on and those which the expert did not rely on. Therefore, the trial court abused its discretion by not acting consistent with the applicable legal standards in denying this line of cross-examination.

Again, because of the closeness of the jury's assessment of responsibility for the accident, we conclude this error affects Dabestani's substantial rights and is grounds for granting a new trial.

**C. The Trial Court Should Not Have Permitted Blotter To Give An Opinion That Dabestani's Senses Were Dulled.**

■ The guardian asserts that the trial court should not have permitted Blotter to

give an opinion that Debestani's senses were dulled. We agree.

The evidence indicated that Blotter is an expert in engineering. He has a Ph.D. in engineering mechanics. He is a professor of mechanical engineering at Utah State University where he teaches courses in dynamics, motion, accelerations, velocities, vibrations, and impact analysis. He engages in engineering consulting on issues such as failure analysis and accident reconstruction. In rendering his opinion as to the cause of the accident in this case, Blotter included the "likely dulling of the senses of" Dabestani as a result of his alcohol consumption. Blotter should not have been permitted to testify concerning this aspect of the causation because his field of expertise does not encompass the medical or physiological areas which would qualify him to testify concerning the effects of alcohol on a particular person. In doing so, the trial court abused its discretion by failing to require a foundation for permitting this testimony. *Reed v. Foster,* 130 Idaho 74, 77–78, 936 P.2d 1316, 1319–20 (1997).

■ Allowing this testimony was not harmless error. Although the jury had previously heard testimony from the guardian's expert and had received an exhibit concerning the effects on people generally of differing levels of blood alcohol concentration, Blotter's testimony concerned the effect of Dabestani's blood alcohol concentration on Dabestani specifically at the time of the accident. The admission of this evidence affects Dabestani's substantial rights and is grounds for granting a new trial.

### D. The Trial Court Incorrectly Instructed the Jury Based on I.C. § 49–910A(3).

■ The guardian asserts that the trial court should not have instructed the jury based on section 49–910A(3) of the Idaho Code (I.C.). We agree.

The evidence at trial indicated that at the time of the accident the truck was equipped with multiple flashing amber lights.

The trial court instructed the jury, as follows:

There was in force in the State of Idaho at the time of the occurrence in question a certain statute which provided that:

I.C. § 49–910A

**Color of lamps and globes limited to certain vehicle classes.**—For the purpose of this chapter lighting devices utilizing various colors of lighted globes approved by the director of law enforcement for use on vehicles shall be restricted to the following class of vehicles:

(3) All vehicles. Any motor vehicle may have attached to it a flashing amber light to warn motorists of a vehicular traffic hazard requiring the exercise of unusual care in approaching, overtaking or passing the vehicle displaying such lighting. The driver of an approaching vehicle shall yield the right-of-way to any stationary vehicle displaying a flashing amber light.

This duty to yield the right-of-way does not excuse either party from exercising reasonable care at all times.

This statute, as originally enacted in 1987, provided in the pertinent part: "Any motor vehicles *shall be entitled to display* a flashing amber light...." 1987 Idaho Sess. Laws Ch. 150, § 1 (emphasis added). When the statute was recodified with the other motor vehicle laws in 1988, the portion emphasized above was changed to "may have attached to it," as the current version provides. 1988 Idaho Sess. Laws Ch. 265, § 236. This indicates to us the intent of the legislature to change the authorization in the statute from a vehicle merely "displaying" a flashing amber light to a vehicle having a flashing amber light "attached to it." *Dohl v. PSF Indus., Inc.,* 127 Idaho 232, 237, 899 P.2d 445, 450 (1995) (stating the rule that "the legislature's amendment of a statute indicates an intent to change the meaning of the provision"). This is especially significant because the first two subsections of I.C. § 49–910A, dealing with lights on police and firefighting vehicles, both referred to the "display" of lights, lenses, or globes when the statute was enacted in 1987. These references were not changed in the 1988 recodification when the reference to "display of a flashing amber light" in subsec-

tion (3) of I.C. § 49–910A was changed to "may have attached to it a flashing amber light." 1988 Idaho Sess. Laws Ch. 265, § 236.

We note that I.C. § 49–920(4) provides:

Any vehicle may be equipped with lamps which may be used for the purpose of warning the operators of other vehicles of the presence of a vehicular traffic hazard requiring the exercise of unusual care in approaching, overtaking or passing, and when so equipped may display that warning in addition to any other warning signals required by this title. Lamps used to display the warning to the front shall be mounted at the same level and as widely spaced laterally as practicable, and shall display simultaneously flashing white or amber lights, or any shade or color between white and amber. The lamps used to display the warning to the rear shall be mounted at the same level and as widely spaced laterally as practicable, and shall show simultaneously flashing amber or red lights, or any shade of color between amber and red. These warning lights shall be visible from a distance of not less than five hundred (500) feet under normal atmospheric conditions at night.

This statute seems to be the one that more accurately addresses the flashing amber lights on the truck that are at issue in this case. There is no evidence that any of the flashing amber lights were attached to the truck. The evidence indicates that they were merely part of the installed equipment on the truck. Therefore, we conclude that the trial court should have instructed the jury based on I.C. § 49–920(4) instead of I.C. § 49–910A(3).

In *Watson v. Navistar International Transportation Corp.*, 121 Idaho 643, 665, 827 P.2d 656, 678 (1992), the Court ruled that in the case of an erroneous instruction "reversible error only occurs when an instruction misleads the jury or prejudices a party." Because of the different specifications in I.C. § 49–910A and I.C. § 49–920(4) and because of the jury's assessment of the responsibility for the accident was so close, we conclude that the instruction based on I.C. § 49–

910A(3) prejudiced Dabestani and is grounds for granting a new trial.

### E. The Trial Court Should Not Have Instructed The Jury That the Speed Limit Was Thirty-five Miles Per Hour.

 The guardian asserts that the trial court should not have instructed the jury that the speed limit was thirty-five miles per hour where the accident occurred. We agree.

At the site of the accident in this case, the highway is normally posted as a fifty-five miles per hour speed limit area. Prior to the night of the accident in this case, sealcoating of the highway was taking place. The Transportation Department (the department) stated in a letter dated June 15, 1995 to the state police:

Temporary reductions in the existing speed limits have been approved during sealcoating operations beginning today and ending approximately June 30, 1995.

A 35 mph speed limit has been approved in the 55 mph speed zones when vehicles are traveling on loose chips and a 45 mph speed limit has been approved when vehicles are traveling on a broomed surface.

The reduced speed limits will be used when reduced speeds are necessary to protect the traveling public, the construction personnel, and the sealcoat. The signs will be removed or covered when not required. Appropriate speed limit signs will be placed at the beginning and end of each work area when a reduced speed is necessary.

This temporary reduction in the existing speed limits is in conformance with Idaho Code 49–201 and ITD Administrative Policy A–12–03. We will appreciate any assistance you can provide.

At the time of the accident in this case, I.C. § 49–201(4) provided:

Whenever the [transportation] board shall determine upon the basis of an engineering and traffic investigation that any maximum speed is greater or less than is reasonable or safe under the conditions found to exist at any intersection or other

place or upon any part of the state highway or interstate highway system, the board may determine and declare a reasonable and safe maximum limit, thereat, not exceeding a maximum limit of sixty-five (65) miles per hour, which shall be effective when appropriate signs giving notice are erected. The speed limit may be declared to be effective at all times or at the times as indicated upon the signs. Differing limits may be established for different times of day, different types of vehicles, varying weather conditions, and other factors bearing on safe speeds, which shall be effective when posted upon appropriate fixed or variable signs.

I.C. § 49–201(4) (1993).

The trial court instructed the jury, as follows:

> There was in force in the State of Idaho at the time of the occurrence in question a certain statute which provided that:
>
> I.C. 49–654
>
> (1) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at an [sic] safe and appropriate speed ... when special hazards exist with respect to ... other traffic or by reason of weather or highway conditions.
>
> (2) Where no special hazard exists that requires lower speed for compliance with subsection (1) of this section the limits as hereinafter authorized shall be maximum lawful speeds, and no person shall drive a vehicle at a speed in excess of the maximum limit which, for Highway 93 at the site of the accident in question on June 23–24, 1995, was thirty-five (35) miles per hour.
>
> A violation of this statute is negligence, unless compliance with the statute was impossible, something over which the party had no control placed him in a position of violation of the statute, or an emergency not of the party's own making caused him to fail to obey the statute or there is an excuse specifically provided in the statute for the conduct.

Evidence was presented at trial that the highway had been broomed on the morning before the accident. A second brooming was scheduled for two days after the accident. The department's engineer on the sealcoat project testified that after the first brooming the contractor was expected to put up a forty-five mile per hour sign. Apparently, the contractor had not done so. At trial, there was evidence indicating that one or more of the thirty-five mile per hour signs were still in place at the time of the accident. There was evidence that Dabestani may have been exceeding thirty-five miles per hour at the time of the accident and evidence that he may not have been exceeding forty-five miles per hour.

The trial court also instructed the jury, as follows:

> There was in force in the State of Idaho at the time of the occurrence in question a certain statute which provided that:
>
> I.C. 49–801
>
> (1) The driver of any vehicle shall obey the instructions of any traffic-control device placed or held in accordance with the provisions of this title, unless otherwise directed by a peace officer, subject to the exceptions granted the driver of an authorized emergency vehicle by this title.
>
> (2) No provisions of this title for which traffic-control devices are required shall be enforced against an alleged violator if at the time and place of the alleged violation a device is not in proper position and sufficiently legible to be seen by an ordinarily observant person....
>
> (3) Whenever traffic-control devices are placed or held in position approximately conforming to the requirements of this title, the devices shall be presumed to have been placed or held by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence.
>
> A violation of this statute is negligence, unless compliance with the statute was impossible, something over which the party had no control placed him in a position of

violation of the statute, or an emergency not of the party's own making caused him to fail to obey the statute or there is an excuse specifically provided in the statute for the conduct.

The effect of this instruction, in conjunction with the instruction based on I.C. § 49–654, was to make it negligence per se for Dabestani to be driving in excess of thirty-five miles per hour when the accident happened, even though the speed limit should have been forty-five miles per hour based on the first brooming. Under these circumstances, we conclude that the trial court should not have instructed the jury that the maximum speed at the site of the accident when the accident happened was thirty-five miles per hour. As provided in I.C. § 49–801(3), there was competent evidence in the form of the testimony of the department's engineer on the sealcoating project that the speed limit was forty-five miles per hour, rebutting any speed signs to the contrary. The trial court should have instructed the jury that the correct speed limit at the site of the accident was forty-five miles per hour based on the first brooming.

We conclude that the instruction based on I.C. § 49–654(2) prejudiced Dabestani's rights and is grounds for granting a new trial.

## IV.

## ERRORS THAT DO NOT REQUIRE A NEW TRIAL BUT WHICH ARE NECESSARY TO THE FINAL DETERMINATION OF THE CASE

The guardian asserts numerous other reasons why there should be a new trial. Among these issues, we find two where we conclude that the trial court did not rule correctly, but which are not grounds for granting a new trial. We address these issues because they are necessary to the final determination of the case. I.C. § 1–205.

### A. The Trial Court Should Not Have Given the Instruction Defining "Under the Influence."

■ The guardian asserts that the trial court should not have instructed the jury concerning the definition of "under the influence." We agree, but conclude that the giving of the instruction was harmless.

It is undisputed that Dabestani had been drinking prior to the accident and that his blood alcohol level was .094 when tested at the hospital. At the time of this accident, a person was considered to be unlawfully "under the influence of alcohol" if that person had "an alcohol concentration of 0.10." I.C. § 18–8004(1)(a) (1994). Therefore, at the time of his accident, Dabestani was not considered to be legally "under the influence of alcohol." The comment to Idaho Civil Jury Instruction (IDJI) 226 states that this instruction defining "under the influence" normally accompanies the "driving under the influence" (DUI) instruction based upon I.C. § 18–8004. The trial court did not give the DUI instruction. The instruction defining "under the influence" improperly suggests to the jury that if Dabestani's mental abilities were impaired, he must have been "under the influence." Therefore, while Dabestani's alcohol consumption is relevant in considering his comparative negligence, this instruction should not have been given. Nevertheless, we conclude that any error in giving this instruction was harmless because the trial court did not instruct the jury that DUI is negligence per se.

### B. The Trial Court Should Have Instructed the Jury Based On I.C. § 49–637(1).

■ The guardian asserts that the trial court should have given his requested instruction based on I.C. § 49–637(1). We agree, but conclude that the failure to give the instruction was harmless error.

All vehicles must remain within a single lane of travel unless movement outside of that lane can be performed safely. I.C. § 49–637(1). At the time of this accident, the truck was not within a single lane of travel, but was perpendicular across both travel lanes of a two lane highway and onto the shoulder. Since other instructions were given covering the backing of vehicles on a highway, the trial court determined that this proposed instruction was cumulative and not

on point. The proposed instruction, however, specifically addresses the driving and maneuvers which were involved in this accident, and while other instructions based on I.C. § 49–603 and I.C. § 49–604, do address backing maneuvers on a highway, they do not contain any mention about staying in one lane. Therefore, the trial court should have given the proposed instruction, based on I.C. § 49–637(1) in order to adequately present the issues and state the applicable law. Because of the other instructions on this same general subject, however, we conclude that the error was harmless.

## V.

### NO OTHER ERRORS

The guardian asserts that the trial court made numerous other errors. We disagree.

In view of our decision to grant the guardian a new trial, we will not individually discuss the other errors the guardian contends the trial court made. Suffice it to say that we have reviewed each of the other issues raised by the guardian and conclude that where an interpretation of the law was involved, the trial court correctly interpreted the law. Where one of these issues involved a discretionary decision of the trial court, we conclude that the trial court understood it had discretion, applied the appropriate standards and acted within the parameters of its discretion, and gave a reasoned basis for its decision.

## VI.

### CONCLUSION

We vacate the judgment and remand the case to the trial court for a new trial.

We award the guardian costs on appeal.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.