# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41684

| | |
|---|---|
| STEPHEN BOSWELL and KARENA BOSWELL, husband and wife, | 2015 Opinion No. 21 |
| Plaintiffs-Appellants, | Filed: April 21, 2015 |
| | Stephen W. Kenyon, Clerk |
| v. | |
| AMBER DAWN STEELE, the Estate of MARY STEELE, | |
| Defendants-Respondents. | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Don Harding, District Judge. Hon. William H. Woodland, District Judge.

Summary judgment <u>vacated</u>, <u>case remanded</u>.

Merrill & Merrill; Kent A. Higgins, Pocatello, for appellants. Kent A. Higgins argued.

Cooper & Larsen; Reed W. Larsen, Pocatello for respondents. Reed W. Larsen argued.

---

WALTERS, Judge Pro Tem

Stephen and Karena Boswell (the Boswells) appeal from the district court's order granting summary judgment to Amber Dawn Steele and the Estate of Mary Steele[1] (the Steeles), and the denial of the Boswells' motion to reconsider. They also appeal from the district court's decision to strike an animal control officer's affidavit, and the court's order denying their motion to compel a deposition of an insurance adjuster. In their amended complaint, the Boswells alleged strict liability, negligence, premises liability, and negligence per se as causes of action. The claims stated in the complaint stem from Stephen Boswell being bitten by Amber Steele's dog. We vacate the judgment and remand this case to the district court.

---

[1] Mary Steele passed away subsequent to the Boswells filing their claims.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

After Amber's dog bit Stephen, the Boswells filed a complaint alleging the various causes of action. Both parties moved for summary judgment. The district court concluded the following facts were undisputed:[2] Mary Steele owned a house in Pocatello where she lived with her granddaughter, Amber Steele. Mary owned a Shih Tzu and Amber owned a Scottish Terrier, Zoey. Both dogs lived with the Steeles at the residence. A fence wrapped around the backyard to keep the dogs on the property. Mary also placed "Beware of Dog" signs on the gates of the property. For the most part, Amber kept Zoey in a room in the basement when she left the house. When Zoey was kept upstairs, Mary used a gate to keep her dog and Zoey in the kitchen.

On the day of the bite, Stephen drove Mary, his mother-in-law, home after she visited with the Boswells at their home. When Stephen and Mary entered the residence, the two dogs were in the kitchen behind the gate. Zoey was barking and growling. Without Mary's knowledge, Stephen walked over to the gate and extended his right hand to Zoey with a closed fist. As he reached his hand towards Zoey, the dog bit a piece of flesh off of the back of his hand. Stephen went to the hospital to have his injuries treated. An animal control officer made a report of the incident. Stephen's wife, Karena, told the officer she previously witnessed Zoey bite an individual, but the animal control officer did not include this in her report. In his deposition, Stephen admitted that before the incident took place, he did not think Zoey was a dangerous or vicious dog. He also said he believed that Mary did nothing wrong in keeping the dogs behind the gate in the kitchen.

Prior to biting Stephen, there were two other incidents where Zoey bit or nipped at someone. The first incident occurred when Zoey bit one of Amber's friends at a barbeque party held at Mary's house. The friend was playing ball with Zoey and at one point went to pick the ball up under Amber's legs. As Amber's friend reached for the ball, Zoey bit her hand. The friend indicated a belief that Zoey was being protective of Amber. The bite drew some blood, but was easily cleaned and bandaged. As described by Karena, the second incident occurred at another party at Mary's house. A different friend of Amber's was bit by Zoey. The bite drew

---

[2]     Although the district court concluded these facts were undisputed, as we explain below, a number of material facts are in dispute.

blood, but did not require medical attention and was described as not being a big deal.[3] The two incidents were not reported to authorities or animal control, there was no need for medical attention, and no lawsuits were filed.

Based on these facts, the district court granted summary judgment in favor of the Steeles. The district court also struck an affidavit of the animal control officer and denied the Boswells' request to depose an insurance adjuster. The case was then reassigned to another district judge. The Boswells filed a motion to reconsider, which was denied. The district court entered a judgment in favor of the Steeles, dismissing the Boswells' claims. The Boswells timely appeal.

## II.

## ANALYSIS

Summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence, or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has

---

[3]     The district court noted that the two incidents may have been the same event, but the court considered them as different incidents for the purposes of summary judgment.

been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses, or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

The Boswells' amended complaint alleged strict liability, negligence, premises liability, and negligence per se. Based on its view of undisputed facts, the district court concluded that the Steeles were entitled to judgment as a matter of law. We address each claim in turn.

## A.  Liability for Domestic Animals

The Boswells contend that the Idaho Supreme Court adopted "strict liability" for dog bites where the owner of the dog knows of the animal's vicious tendencies. The Boswells rely on *McClain v. Lewiston Interstate Fair & Racing Ass'n*, 17 Idaho 63, 104 P. 1015 (1909). In *McClain*, the Idaho Supreme Court reviewed a number of errors alleged by the appellants who were found liable for the actions of a dog. The plaintiff, Benjamin McClain, was a jockey who was invited to the fairgrounds by the Lewiston Interstate Fair & Racing Association to take part in horse racing. Defendant Norman Vollmer took his greyhound dog to the fairgrounds. The fairgrounds' gatekeeper told Vollmer that dogs were not permitted to run loose on the grounds and warned of the danger of allowing a dog to run loose. The racing association also had a rule against allowing animals other than those racing to be on the fairgrounds. Despite this notice, the dog was brought onto the fairgrounds where McClain was engaged in a speed competition. During the race, the greyhound broke free and crashed into the horse McClain was riding. This

4

caused McClain to be thrown to the ground. Then another horse, which had been following closely behind, ran into McClain's horse knocking the horse on top of McClain. The jury found Vollmer and the racing association liable for McClain's injuries.

The defendants argued on appeal that the complaint failed to allege the defendants knew of tendencies possessed by the dog that would lead to injury. The defendants relied on *Ward v. Danzeizen*, 111 Ill. App. 163 (Ill. App. Ct. 1903), for the proposition that "the owner of domesticated animals is not liable for injuries done by them, unless he is proved to have had notice of the inclination of the particular animal complained of to commit such injuries, there being no presumption that animals of that species are vicious or dangerous." *Id.* at 165. The Idaho Supreme Court conceded that this was a correct statement of the law under the facts of that case, but noted that McClain's case was distinguishable. *McClain*, 17 Idaho at 79, 104 P. at 1020. The distinction was that Vollmer's dog was not permitted to be on the fairground property; it was a trespasser. The Court then expressed what it viewed to be the correct statement of law governing domestic animals:

> If domestic animals, such as oxen and horses, injure anyone, in person or property, *if they are rightfully in the place where they do the mischief*, the owner of such animals is not liable for such injury, unless he knew that they were accustomed to do mischief. And in suits for such injuries, such knowledge must be alleged and proved. For unless the owner knew that the beast was vicious, he is not liable. If the owner had such knowledge, he is liable.
> The owner of domestic animals, *if they are wrongfully in the place where they do any mischief*, is liable for it, though he had no notice that they had been accustomed to do so before. In cases of this kind the ground of the action is, that the animals were wrongfully in the place where the injury was done. And it is not necessary to allege or prove any knowledge on the part of the owner, that they had previously been vicious.

*Id.* at 79, 104 P. at 1020 (quoting *Decker v. Gammon*, 44 Me. 322, 328, 329 (1857)). Because the greyhound was a trespasser while causing the injury, it was not necessary for the plaintiff to allege knowledge of any vicious tendencies. However, the Court also noted that the trespass would have to be "the result of the negligence of the owner" in order to establish liability. *McClain*, 17 Idaho at 82, 104 P. at 1021. Further, the complaint actually did describe how greyhounds have a tendency to take part in chasing animals, and this information was "proper as bearing upon the question of negligence." *Id.* at 83, 104 P. at 1022. Finally, the Court held that there was sufficient evidence to support the jury's conclusion of negligence, and affirmed the

jury instructions that required a showing of negligence. *Id.* at 95, 98-99, 104 P. at 1026, 1027-28. From all this, it is apparent the Court did not adopt a "strict liability" cause of action in *McClain*, but instead affirmed liability stemming from a negligence cause of action.

On the other hand, the Court adopted a rule of law lacking the ordinary care scienter requirement of negligence when owners of domestic animals know of vicious tendencies. In cases where a domestic animal is not trespassing, the owner of the animal is liable for injuries caused if the owner knew or should have known of the animal's vicious or dangerous tendencies. *McClain*, 17 Idaho at 79, 104 P. at 1020. Absent from the rule is any requirement to show a failure to exercise ordinary care.

This rule was again recently affirmed by the Idaho Supreme Court. *Braese v. Stinker Stores, Inc.*, 157 Idaho 443, 337 P.3d 602 (2014). In *Braese*, the Court affirmed the grant of summary judgment in favor of the defendant, Stinker Stores, Inc. The plaintiff in that case alleged the store breached a duty of care by allowing a dog to remain in its store. The store allowed dog owners to bring their dogs into the store. The plaintiff was injured when a customer's dog jumped up on him and knocked him over. The Court first concluded that the store did not have a duty because allowing dogs into the store did not create an unreasonable risk to the public. This is because "[u]nder common law, all dogs, regardless of breed or size, are presumed to be harmless domestic animals." *Braese*, 157 Idaho at 445, 337 P.3d at 604 (quoting 4 Am. Jur. 2d *Animals* § 75 (2007)). There was no evidence presented to establish that allowing dogs into the store would be contrary to the presumption that dogs are harmless; thus, the store did not create an unreasonable risk of harm. The Court next addressed whether allowing the dog to remain in the store breached a duty based on the known behavior of the animal. The Court again favorably quoted from American Jurisprudence: "In the absence of statute to the contrary, an owner is liable for injuries caused by a domesticated animal where the owner knew or should have known of the animal's vicious or dangerous propensity." *Braese*, 157 Idaho at 446, 337 P.3d at 605 (quoting 4 Am. Jur. 2d *Animals* § 67). Therefore, "[a] store owner would also have a duty to protect its patrons from a dog that the store owner knew or should have known was vicious or had a dangerous propensity." *Braese*, 157 Idaho at 446, 337 P.3d at 605. Notably, the Court did not mention the need to show a failure to exercise ordinary care under these circumstances. Because there was no evidence the store employees knew the dog might jump up on customers, the store did not have a duty to protect the customer from the dog.

6

The Boswells identify secondary sources, as well as other jurisdictions, that refer to the form of liability described in *McClain* for owners with knowledge of an animal's dangerousness as "strict liability." We do not think it necessary to adopt that label. It is sufficient to say that the Idaho Supreme Court has adopted a rule that an owner of a domesticated animal will be liable for injuries it causes if the owner had prior knowledge, or should have known, of the animal's dangerous propensity. It is the elements of the cause of action that are significant, not a label of strict liability or negligence.[4]

Turning to the Boswells' amended complaint, the Boswells alleged that the Steeles knew Zoey was a vicious animal and that Mr. Boswell had been bitten by the dog. The Boswells presented testimony that Zoey had bitten two other individuals prior to Zoey biting Stephen. The Steeles allege the prior incidents complained of by the Boswells were not bites, but the dog was merely being protective by nipping at the individuals. Whether these incidents constituted notice of vicious propensity is a question for the jury. The incidents, though not severe, resulted in injury evidenced by bleeding and the need to clean the wounds. The Boswells pled a cause of action and sufficiently supported it with evidence to survive summary judgment.

Next, the evidence of whether Stephen provoked Zoey was disputed. Stephen indicated that when he entered the house, "both dogs were excited to see [him] and Mary," indicating Zoey "was whining, wagging her tail, excited." He also explained he extended his hand towards the dog in a manner to allow the dogs to sniff his hand. As described by Stephen, the dog bite was unprovoked.[5] Assuming without deciding that provocation or providing adequate warnings would be a defense, the district court erred in granting summary judgment on this cause of action.

---

[4] The distinction between a strict liability cause of action and a negligence cause of action may lie in the type of contributory negligence allowed as a defense. *Compare* Restatement (Second) of Torts § 515 *with* 4 Am. Jur. 2d *Animals* § 67. However, this Court has not been asked to address the law governing any defense to liability in this case, and we make no comment on its application.

[5] This is in contrast to what this Court has previously held to be provocation. In *Boots ex rel. Boots v. Winters*, 145 Idaho 389, 395, 179 P.3d 352, 358 (Ct. App. 2008), this Court concluded the boy "provoked the brown dog's attack by kicking the fence and swinging his jacket at the dog."

**B.      Negligence**

The Boswells also alleged simple negligence.  In Idaho, a cause of action for negligence requires proof of the following:  (1) the existence of a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage.  *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 175-76, 804 P.2d 900, 904-05 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).  The Boswells alleged in their amended complaint that the Steeles breached a duty by failing to properly secure the dog, train or supervise the dog, and otherwise exercise ordinary care under the circumstances.

The district court granted summary judgment against the Boswells concluding that they failed to show the Steeles owed a duty of care.  The Steeles argue summary judgment was proper because Mary put up "Beware of Dog" signs, the Steeles did not know Zoey was dangerous, and Stephen approached the dog voluntarily with a closed fist while the dog was growling and barking.

The district court erred in granting summary judgment in favor of the Steeles.  The Boswells provided evidence that Zoey had bitten on two previous occasions.  Though the Steeles allege these incidents were not biting incidents, again, whether these incidents provided notice of vicious propensity is a question for the jury.  Additionally, whether putting up generic warning signs and keeping an alleged vicious dog behind a small gate is sufficient to meet this duty would be a question for the jury.  Finally, whether Stephen provoked the dog was disputed. Therefore, the district court erred in granting summary judgment in favor of the Steeles on the Boswells' claim of negligence.

**C.      Premises Liability**

The Boswells also claimed Mary violated her duty as a homeowner by keeping a vicious dog on her property.  The duty owed by owners and possessors of land depends on the status of the person injured on the land--that is, whether he or she is an invitee, licensee, or trespasser. *Ball v. City of Blackfoot*, 152 Idaho 673, 677, 273 P.3d 1266, 1270 (2012); *Robinson v. Mueller*, 156 Idaho 237, 239-40, 322 P.3d 319, 321-22 (Ct. App. 2014).  An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary, or

8

other tangible benefit to the landowner. *Holzheimer v. Johannesen*, 125 Idaho 397, 400, 871 P.2d 814, 817 (1994). A landowner owes an invitee the duty to keep the premises in a reasonably safe condition or to warn of hidden or concealed dangers. *Id.* A licensee is a visitor who goes upon the premises of another with the consent of the landowner in pursuit of the visitor's purpose. *Id.*; *Evans v. Park*, 112 Idaho 400, 401, 732 P.2d 369, 370 (Ct. App. 1987). Likewise, a social guest is also a licensee. *Holzheimer*, 125 Idaho at 400, 871 P.2d at 817. The duty owed to a licensee is narrow. A landowner is only required to share with the licensee knowledge of dangerous conditions or activities on the land. *Evans*, 112 Idaho at 401, 732 P.2d at 370.

The Boswells challenge the district court's conclusion that Stephen had the status of a social guest. They argue that Stephen conveyed a tangible benefit to Mary by driving her home. However, this fails to recognize that Stephen did not enter the residence as part of driving Mary home. Even assuming providing a ride home can be characterized as a tangible benefit, Stephen did not enter the house as part of driving Mary home. Thus, Stephen entered as a social guest.

The district court granted summary judgment on this claim because it concluded that Mary did not have knowledge of the dog's viciousness and because the dog was properly secured behind the gate in the kitchen. The Boswells argue there was sufficient evidence to put before the jury the question of whether Mary failed to warn Stephen of Zoey's dangerous propensities. As we have already concluded, the two previous biting incidents provided disputed evidence as to whether Mary was on notice that Zoey had vicious tendencies. Mary having failed to warn Stephen that Zoey may unexpectedly bite provides sufficient evidence for a jury to conclude Mary breached a duty to warn Stephen. Further, Mary's placing the warning signs on her gates does not establish, as a matter of law, that she fulfilled her duty to warn. She testified that the signs were put up to dissuade the neighborhood youth from coming onto her property. Whether the warning signs were sufficient to warn Stephen of the danger of the dog is a question for a jury. Additionally, Stephen testified he had a number of interactions with Zoey, and only knew the dog to be friendly. Absent information that a dog may bite unprovoked, it can be easily inferred from the evidence presented by the Boswells that because Mary allowed Stephen into the house, the signs were inapplicable to him. The district court also put great weight on Stephen's comments that he did not feel Mary did anything wrong in how she secured Zoey. This ignores that Stephen's claim stems from the failure to warn of the dog's dangerousness, not

9

in how the dog was secured. Because the Boswells put forward sufficient evidence that Mary failed to warn Stephen of a known dangerous dog, the district court erred in granting summary judgment as to the Boswells' premises liability claim.

## D.    Negligence Per Se

"[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence per se." *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). "The effect of establishing negligence *per se* through violation of a statute is to conclusively establish the first two elements of a cause of action in negligence." *Slade v. Smith's Mgmt. Corp.*, 119 Idaho 482, 489, 808 P.2d 401, 408 (1991).

> In order to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury. [*Ahles v. Tabor*, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001)] (citing *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986)).

*O'Guin v. Bingham Cnty.*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005). The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Insurance Fund*, 134 Idaho 130, 134, 997

10

P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas County*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011).

The Boswells relied on various code sections from the Pocatello Municipal Code (PMC) and Idaho Code § 25-2805. The district court concluded that the PMC did not apply to Zoey's conduct because the Steeles did not have knowledge that Zoey was a vicious or dangerous dog and because the dog was provoked. Likewise, the court concluded the Idaho Code section did not apply because the dog was provoked. In denying the Boswells' motion for reconsideration, the district court concluded the ordinance was not sufficiently clear as to what constitutes provocation or what would constitute a threatening manner by a person, and that violations of the ordinance would not be the proximate cause of Stephen's injury because he voluntary approached the dog and extended his hand beyond the gate.[6]

Pocatello Municipal Code 6.04.050(A) states:

> A. Dangerous Conduct By Animal Prohibited: The owner or custodian of any animal which commits any of the acts defined in this chapter as "dangerous" may be cited for a misdemeanor and the animal control department may seize and impound the animal until the matter has been adjudicated. The conduct shall not be deemed dangerous if the victim (person, domestic animal, or livestock) was committing a tort against the animal's owner/custodian, or committing a trespass or other tort on the premises of the animal's owner/custodian. Specifically prohibited are the following acts:
> 1. If unprovoked by teasing, taunting, or a threatening manner by any person, approaching said person in an apparent attitude of attack upon the streets, sidewalks, public grounds or places, common areas within subdivisions or mobile home or recreational vehicle parks, common grounds of apartment buildings, condominiums, or townhouse developments, or private property not solely owned or possessed by the owner or custodian of the animal; or
> 2. Biting, inflicting injury, assaulting, or otherwise attacking a human being or domestic animal or livestock without justifiable provocation.

---

[6] The Steeles argue the Boswells' negligence per se claims were also properly dismissed because the criminal statutes relied on do not expressly create a private cause of action. *See Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 176, 923 P.2d 416, 421 (1996) (holding no private cause of action arising from various criminal statutes). However, the Boswells do not argue the Pocatello Municipal Code and Idaho Code sections only expressly provide a private cause of action. Rather, they also rely on the code sections under a negligence per se cause of action to show that the Steeles violated an established duty.

The ordinance lists a number of acts that are prohibited as dangerous and are relevant to this case, such as biting, inflicting injury, assaulting, or otherwise attacking a human. Zoey ripping off the back of Stephen's hand applies as a dangerous act under the ordinance. Thus, the only question is whether Zoey was provoked.

We first note, contrary to the district court's conclusion, that the ordinance clearly defines the standard of conduct. Even if provocation was not sufficiently clear from the plain meaning of the word, the statute further provides clarity by explaining in subsection one that provocation can include "teasing, taunting, or a threatening manner." As to whether Zoey was provoked, the Steeles argue that the undisputed evidence shows Stephen provoked Zoey by approaching the dog with a closed fist while Zoey was barking and growling. However, as we have already concluded, this evidence was disputed. Stephen's testimony that the dog was excited to see him and was wagging her tail was sufficient to put this fact at issue. Extending a closed hand towards what appears to be a friendly dog to allow the dog to sniff the hand does not undisputedly amount to provocation. Therefore, the district court erred in granting summary judgment as to the negligence per se claim relating to PMC 6.04.050(A).

Next, in the Boswells' amended complaint they rely on PMC 6.04.060, which sets out requirements for harboring a dangerous animal:

> A. Restraint Requirements: The owner/custodian of any animal convicted of a violation of the dangerous conduct prohibitions set out in this chapter shall complete the requirements of this subsection and subsection B of this section within thirty (30) days of the date of such conviction. Every dangerous animal shall be securely confined by its owner/custodian within a building or secure enclosure as set out herein, and whenever off the premises of its owner/custodian, shall be either caged or securely muzzled and restrained by an adult with a chain or tether having a minimum tensile strength of three hundred (300) pounds and not more than three feet (3') in length, and shall be under the direct control and supervision of the adult owner/custodian of the dangerous animal. Every person harboring a dangerous animal is charged with an affirmative duty to confine the animal in such a way that persons and other animals do not have access to such animal. To be considered secure, a facility must be constructed in a manner capable of containing the animal. It shall be a completed structure with a securely attached roof of durable material which is secured to a foundation or concrete pad, or it shall be a chainlink structure which includes a securely attached roof, and which is embedded into the ground to a depth of no less than one foot (1'). Both the completed structure and the chainlink structure shall be at least six feet (6') in height and shall include a locking mechanism which shall be kept locked at all times the animal is within said facility.

The district court did not provide specific analysis why a claim based upon this code section should be dismissed, and the Boswells have provided limited briefing on this section on appeal. Although the dog was secured in such a fashion as to present no danger to people outside of the house, the enclosure within the Steeles' home was not sufficiently secure to protect people that the Steeles allowed to enter the house, whether as invitees or licensees. Because Mary permitted Stephen to enter her home, the relevant question becomes whether the gate that confined the dog to Mary's kitchen met the ordinance requirement that the animal be confined "in such a way that persons . . . do not have access to such animal." Plainly, the evidence shows that it did not. Therefore, the district court erred in granting summary judgment on this cause of action because, on the evidence presented, the Steeles have not demonstrated that they are entitled to judgment as a matter of law.

Idaho Code § 25-2805 also relates to securing a vicious dog. Idaho Code § 25-2805(2) provides:

> (2) Any dog which, when not physically provoked, physically attacks, wounds, bites or otherwise injures any person who is not trespassing, is vicious. It shall be unlawful for the owner or for the owner of premises on which a vicious dog is present to harbor a vicious dog outside a secure enclosure. A secure enclosure is one from which the animal cannot escape and for which exit and entry is controlled by the owner of the premises or owner of the animal. Any vicious dog removed from the secure enclosure must be restrained by a chain sufficient to control the vicious dog. Persons guilty of a violation of this subsection, and in addition to any liability as provided in section 25-2806, Idaho Code, shall be guilty of a misdemeanor. For a second or subsequent violation of this subsection, the court may, in the interest of public safety, order the owner to have the vicious dog destroyed or may direct the appropriate authorities to destroy the dog.

The statute first defines what a vicious dog is, and then sets out the requirements of how such a dog must be secured. Whether the dog was vicious and whether it was properly confined in a secure enclosure, as contemplated by the statute, are questions for the jury. Thus, the district court erred in granting summary judgment in favor of the Steeles on the Boswells' negligence per se claim stemming from Idaho Code § 25-2805(2).

**E.     PMC 6.04.050(E)**

The Boswells argue that PMC 6.04.050(E) creates a private cause of action where an owner of a dangerous animal causes injuries. Pocatello Municipal Code 6.04.050(E) states:

E. Owner Liability:  An adult owner/custodian of a dangerous animal shall be liable for all injuries and property damage sustained by any person or by any animal caused by an unprovoked attack by any dangerous animal, plus all costs, civil judgments or penalties, criminal fines, final terms, veterinary fees, shelter impound fees, and any other penalties and orders.  In the event that the owner/custodian of the dangerous animal is a minor, the minor's parent or guardian shall be so liable.

The PMC 6.04.010 defines dangerous animal as:

DANGEROUS ANIMAL:

A.   Any animal which, when unprovoked by teasing, taunting, or a threatening manner by any person, approaches said person in an apparent attitude of attack upon the streets, sidewalks, public grounds or places, common areas within subdivisions or mobile home or recreational vehicle parks, commons grounds of apartment buildings, condominiums, or townhouse developments, or private property not solely owned or possessed by the owner or custodian of the animal.

B.   Any animal with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to otherwise endanger the safety of human beings or domestic animals or livestock; or

C.  Any animal which bites, inflicts injury, assaults, or otherwise attacks a human being or domestic animal or livestock without justifiable provocation; or

D.  Any animal owned or harbored primarily or in part for the purpose of fighting or any animal trained for fighting; or

E.  Any dog which has been trained as an attack dog, except dogs used by law enforcement agencies.

Exceptions:  An animal will not be considered dangerous if it engages in any of the above listed actions toward a person or animal that is either: a) committing a trespass or other tort upon the premises of the animal's owner or custodian, or b) committing a crime against the animal's owner or custodian. An animal will not be considered dangerous if any of the above actions occur when the animal is being teased, tormented, or abused, or if the actions were in reaction to either a crime committed by a person or an attempt by the person to commit a crime.

Upon reviewing the ordinance, it is apparent that PMC 6.04.050(E) creates a private cause of action when a dangerous animal, as defined in PMC 6.04.010, causes injury.  The district court does not appear to have addressed this ordinance as a standalone cause of action.[7] The Steeles argue that none of the Pocatello ordinances provide a private cause of action, express

---

[7]    In their amended complaint, the Boswells included the ordinance under the headings strict liability, negligence per se, and premises liability.  By reversing the dismissal of this portion of the Boswells' amended complaint, we simply hold that the ordinance provides a standalone cause of action.

or implied. However, the plain language of this ordinance expressly states that an owner of a dangerous animal that causes injury "shall be liable." As to whether Zoey was provoked, the Steeles argue that the undisputed evidence shows Stephen provoked Zoey by approaching the dog with a closed fist while Zoey was barking and growling. However, as we have already concluded, this evidence was disputed. Stephen's testimony that the dog was excited to see him and was wagging her tail was sufficient to put this fact at issue. Extending a closed hand towards what appears to be a friendly dog to allow the dog to sniff the hand does not undisputedly amount to provocation. Additionally, as discussed previously, it is disputed whether Zoey had previously bitten others unprovoked. Thus, it is disputed whether Zoey would be considered a dangerous animal under this code section. Therefore, the district court erred in granting summary judgment and dismissing the Boswells' claim as it relates to this ordinance.

## F.    Other Claims of Error

The Boswells argue the district court erred in striking an affidavit of the animal control officer when considering the motion for summary judgment. The animal control officer testified that she had reviewed the affidavit of Amber's friend where she described how Zoey bit her, and the officer concluded that based on her training and experience the bite constituted a previous bite and showed that Zoey had a dangerous propensity. Given that we have reversed the district court on all claims that would need to rely on information regarding Zoey's dangerous propensity, we need not address this issue.

Finally, the Boswells argue that the district court erred in quashing the subpoena to depose an insurance adjuster. The district court concluded that information possessed by the insurance adjuster was work product and unavailable for discovery. In a letter to the Boswells' attorney rejecting a demand for damages made by the Boswells, the adjuster described a previous incident where Zoey had been provoked and nipped at an intoxicated individual, but did not bite that person. The described incident varied from the one conveyed by Amber's friend, and the one described by Mary. The Boswells argue that deposing the insurance adjuster could lead to discoverable evidence, namely information about this possible other biting incident.

The scope of discovery is governed by I.R.C.P. 26(b)(1), which includes discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." One form of protected information is the work product doctrine, which stems from I.R.C.P. 26(b)(3). That rule states in relevant part:

Trial Preparation--Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In *Sanders v. Ayrhart*, 89 Idaho 302, 312, 404 P.2d 589, 594-95 (1965), the Idaho Supreme Court reviewed interrogatories relating to preliminary information, which the Court characterized as outside of the attorney's work product:

The remaining interrogatories are concerned with names and addresses of witnesses contacted by the defendant, his attorney or his indemnitor; the existence and location of any photographs of the scene of the accident; and whether defendant or his attorney had copies of the police report of the accident. Defendant argues that these interrogatories are an intrusion into the work product of defendant's investigators and attorney and therefore improper. Defendant's position is not well taken. The questions are of a preliminary nature designed to determine whether information protected by I.R.C.P. 26(b) is available. In *State ex rel. Pete Rhodes Supply Co. v. Crain*, 373 S.W.2d 38 (Mo. 1963), the court, in interpreting a rule similar to I.R.C.P. 26(b), held that names and addresses of witnesses to an accident known by a party or his attorney did not involve the "work product" of his counsel. The trial court did not err in requiring defendant to answer these interrogatories without a showing of undue hardship or injustice.

*Sanders*, 89 Idaho at 312, 404 P.2d at 594-95. The Boswells argue they should be able to depose the insurance adjuster in order to determine the source of the information disclosed in the letter. If the Boswells are correct that the insurance adjuster knows of an additional individual bitten by Zoey, then they are entitled to learn this information and it is not work product.

The Steeles argue that the Idaho Supreme Court has indicated that statements made to an insurance adjuster are work product and protected from discovery. In *Dabestani v. Bellus*, 131 Idaho 542, 545, 961 P.2d 633, 636 (1998), the Idaho Supreme Court agreed that a *statement* made to an insurance adjuster was protected as work product and free from discovery. However, unlike the referenced statement in *Dabestani*, here the Boswells seek information regarding the identity of a potential witness that could help prove their various claims. The district court's order quashing the subpoena prohibited the insurance adjuster's deposition in its entirety and was premature. Rather, the work product objection is the type that could be made during the

16

deposition itself as questions are presented. Accordingly, the district court erred in quashing the Boswells' subpoena to depose the insurance adjuster.

**G.      Attorney Fees**

Both parties request attorney fees on appeal under Idaho Code § 12-121. That section allows an award of attorney fees to the prevailing party. Attorney fees under section 12-121 "may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). Although the appellants and not the respondents are the prevailing parties, we do not find that the defense of the appeal was frivolous, unreasonable, or without foundation. Therefore, neither party is awarded attorney fees on appeal.

## III.

## CONCLUSION

The district court erred by granting summary judgment in favor of the Steeles as to the Boswells' negligence per se claims arising from PMC 6.04.060 and Idaho Code § 25-2805. The district court also erred in granting summary judgment in favor of the Steeles on the claim alleging owner liability for injury caused by an animal known to have vicious tendencies, the negligence claim, the premises liability claim, the negligence per se claim stemming from PMC 6.04.050(A), and the cause of action arising under PMC 6.04.050(E). Furthermore, we also reverse the district court's order quashing the subpoena of the insurance adjuster. Therefore, we vacate the judgment and remand this case to the district court. Costs are awarded to appellants; no attorney fees are allowed.

Chief Judge MELANSON and Judge LANSING **CONCUR.**

17