**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49890**

| | | |
|---|---|---|
| In the Interest of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed: November 10, 2022 |
| | ) | |
| Petitioner-Respondent, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT** |
| JANE DOE (2022-29), | ) ) | **BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, affirmed.

Anthony Geddes, Chief Ada County Public Defender; Karen L. Jennings, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica L. Partridge, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate court's judgment terminating her parental rights to her minor child. Mother argues the court erred by concluding that she neglected the child and that terminating her parental rights is in the child's best interests. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother gave birth to the child in October 2020. When Mother was admitted to the hospital to give birth, she tested positive for methamphetamine. Likewise, the child tested positive after he was born. Thereafter, the child remained in the neonatal intensive care unit (NICU) for several days. After Mother's discharge from the hospital, she did not return to the hospital to see or care

1

for the child for approximately three days. While the child was in the NICU, Mother tested positive for cannabinoids; the child's care providers noted Mother was erratic, agitated, and distracted and had difficulty caring for the child; and one of the child's physicians expressed "grave concerns" about Mother's ability to manage the child's medical care at home. Before the child's discharge from the hospital, the Department of Health and Welfare took custody of him, and the magistrate court later awarded the Department temporary custody under the Child Protection Act (CPA).

In December 2020, the magistrate court approved a case plan for Mother to perform. Among other things, the case plan required Mother to participate in random drug testing, to undergo a psychological evaluation, to improve her parenting skills, and to maintain safe and stable housing. In November 2020, Mother began working with a family preservation services specialist during Mother's visits with the child. Eventually, these sessions transitioned to home visits. Due to concerns related to the home's safety and Mother's mental stability, however, the sessions reverted after three weeks to visitation at the Department. In April 2021, the sessions ended entirely because they had not transitioned back to home visits.

In February 2021, Dr. Book performed a psychological evaluation of Mother. During this evaluation, she denied using drugs or drinking alcohol and was not forthright about her mental health issues. In May 2021, Dr. DeLawyer performed a second psychological evaluation of Mother. During this evaluation, Mother disclosed many details she had not disclosed to Dr. Book including, for example, prior sexual abuse and domestic violence, mental health issues, and alcohol and drug use.

Although Mother participated in some substance abuse treatment, she failed to submit to urinalysis testing consistently and tested positive for methamphetamine on four occasions between November 2021 and January 2022. She also tested positive for other controlled substances on one of those occasions. Additionally, in March 2021, Mother was charged with driving under the influence (DUI) and leaving the scene of an accident and was later convicted of DUI.

In January 2022, the magistrate court approved a change in the permanency goal to termination of Mother's parental rights and adoption of the child. In July 2022, the court held a termination trial. At that trial, twelve witnesses testified including Mother, three Department social workers, a family preservation specialist, the guardian ad litem, Dr. Book, and Dr. DeLawyer. The court admitted into evidence Dr. Book's and Dr. DeLawyer's written psychological evaluations, as Exhibits 10 and 11 respectively. Mother also presented the

testimony of a former Department client services technician, who observed some of Mother's visits with the child.

Following the trial, the magistrate court entered written findings of fact and conclusions of law. The court found that Mother's "historic and on-going substance abuse issues impair her ability" to provide a safe, stable home for the child; she has "profound mental health concerns" impeding her ability to safely parent the child; and her "inability to address her substance abuse and mental health concerns, maintain employment, and reduce the general tumult that pervades her life interferes with her ability to provide proper parental care and control for the child." *See* Idaho Code § 16-2005 (providing negligence as grounds for termination); I.C. § 16-1602(31)(b) (defining negligence to include inability to discharge parental responsibilities). Further, the court concluded terminating Mother's parental rights is in the child's best interests. Accordingly, the court entered the judgment terminating Mother's parental rights.[1]

Mother timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

---

[1] The magistrate court also terminated the father's parental rights to the child. Father's rights, however, are not at issue in this appeal.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

We review for an abuse of discretion a trial court's determination as to the admissibility of evidence at trial. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

### A. Neglect

Mother challenges the magistrate court's conclusion that she neglected the child. She argues that the court erred in finding her "historic and ongoing mental health and substance abuse

4

issues impede her ability to provide [a] safe and stable home for the child" and "her ability to provide proper parental care and control of the child." Mother's challenges to these findings, however, are limited to her arguments that the court abused its discretion by finding a former Department client services technician's testimony was not credible and by admitting and considering Dr. Book's testimony and Dr. DeLawyer's testimony and their written psychological evaluations.

The Idaho Rules of Evidence govern the admissibility of evidence at a parental termination hearing. *See* Idaho Juvenile Rule 51(c) ("Where a petition to terminate parental rights has been filed in a C.P.A. case, the Idaho Rules of Evidence shall apply to proceedings on the petition to terminate."); *see also Idaho Dep't of Health & Welfare v. Doe*, 165 Idaho 33, 44, 437 P.3d 33, 44 (2019) (same). While I.C. § 16-2009 provides a court may admit and rely on "relevant and material information of any nature, including that contained in reports, studies or examinations," this Court has held that this statute is invalid to the extent it provides for the admission of evidence contrary to the Idaho Rules of Evidence. *State, Dep't of Health & Welfare v. Doe (2019-12)*, 165 Idaho 675, 679, 450 P.3d 323, 327 (Ct. App. 2019).

To preserve an evidentiary objection for appellate review, I.R.E. 103 requires the party challenging an evidentiary ruling to state clearly the grounds for objecting to the evidence's admissibility, unless the basis for the objection is apparent from the context. Although I.R.E. 103(a)(1)(B) allows for appellate review if the grounds for the objection are apparent from the context, such a review is limited. *State v. Chacon*, 168 Idaho 524, 533, 484 P.3d 208, 217 (Ct. App. 2021). An objection must be timely and specific. *Id.* at 532, 484 P.3d at 216. Further, an objection on one basis does not preserve an objection on another basis. *Id.* at 533, 484 P.3d at 217. On appeal, a party may not change its legal position from that presented in the trial court. *Id.*

Not every evidentiary error requires a reversal. Idaho Rule of Evidence 103(a) provides that "a party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party." Similarly, Idaho Rule of Civil Procedure 61 provides that "no error in admitting or excluding evidence . . . is ground . . . for vacating . . . a judgment" and that "at every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Under these rules, even if the magistrate court erred by admitting certain evidence, that error is not reversible unless it adversely affects a substantial right of the objecting party.

5

1. **Exhibit 10**

At trial, Mother objected to the admission of Exhibit 10, Dr. Book's psychological evaluation, on the grounds that the Department requested and paid for the evaluation during the course of the CPA case and that the evaluation was "a year and a half" old. Specifically, Mother's counsel stated:

> The report was created at the behest of [the Department], paid by [the Department]. The report was a year and a half ago and is fairly ancient in terms of psychological evaluations.
>
> It was part of the child protection case. And it was done to encourage participation by a parent in order to create case plans and to help the reasonable efforts towards reunification. And to use it under circumstances for a termination would be patently unfair.

Further, Mother's counsel stated:

> I objected to the introduction of the psychological report because it had been created for the purposes of planning reasonable efforts and to help my client, you know for reunification. It was created as part of the child protection case-in-chief. And it was admitted as a document in that particular file.
>
> And to use it at this point would be not only contrary to the use of documents and evidence from the child protection case in general, but also for--you know, it's just unfair, under those circumstances, to use something created by [the Department], as well as the timeliness of it.

On appeal, Mother fails to identify any specific information in Exhibit 10, which she contends is inadmissible. Rather, she asserts the magistrate court should have excluded Exhibit 10 in its entirety. Her arguments on appeal include that the report "was a year and a half old"; the Department "ordered" the report; it "use[s] hearsay material"; and Mother's "language and culture" could have impacted the results. None of these arguments is successful, however.

Mother failed to preserve any objection based on hearsay or the purported inaccuracy of the "results" of the evaluation that her "language and culture may have caused." *See Chacon*, 168 Idaho at 532, 484 P.3d at 216 (noting objection must be specific). Further, that Dr. Book prepared the psychological evaluation a year and a half before the termination trial does not necessarily preclude Exhibit 10's admission, at least in its entirety. Rather, the court has the discretion to determine whether evidence is too remote and may consider a parent's past conduct when determining whether grounds exist for terminating parental rights. *See Dayley v. State, Dep't of Health & Welfare,* 112 Idaho 522, 525, 733 P.2d 743, 746 (1987) (ruling court may consider parent's past conduct in determining whether parent will be neglectful in future); *Idaho Dep't of*

6

*Health & Welfare v. Doe*, 155 Idaho 145, 155, 306 P.3d 230, 240 (Ct. App. 2013) (noting court has "broad discretion in determining whether evidence is or is not too remote").

Additionally, Mother offers no authority in support of her argument that Exhibit 10 is inadmissible in its entirety because the Department "ordered" and paid for the psychological evaluation. Idaho Juvenile Rule 48(e) provides the Department may use documents from the court's record in the CPA case to meet its burden at the termination trial if "the part [of the record] offered is admissible under the Idaho Rules of Evidence." In this case, however, Mother failed to assert any objection at trial to establish Exhibit 10's inadmissibility, either in its entirety or otherwise.

Finally, Mother fails to argue Exhibit 10's admission adversely affected a substantial right. Although Mother generally argues the error was not "harmless," was "clear" error and "violated her rights," she does not identify any substantial right the purported error adversely affected. *See, e.g.*, *Dabestani v. Bellus*, 131 Idaho 542, 544-45, 961 P.2d 633, 635-36 (1998) (concluding refusal to allow cross-examination affected substantial right); *Downing v. State*, 132 Idaho 861, 864, 979 P.2d 1219, 1223 (Ct. App. 1999) (concluding defective notice of intent to dismiss case affected substantial right to respond to notice). Mother notes "the right to parent is a fundamental right," perhaps suggesting that Exhibit 10's admission adversely affected that right. Such an argument, however, subsumes the rule that not every evidentiary error warrants reversal. *See* I.R.E. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party."); I.R.C.P. 61 (requiring court to "disregard all errors and defects that do not affect any party's substantial rights").

### 2. Exhibit 11

Mother also challenges the magistrate court's admission of Exhibit 11, Dr. DeLawyer's psychological evaluation of Mother. Similar to Mother's challenges to Exhibit 10, she fails to identify any specific information in Exhibit 11 she contends is inadmissible. Rather, she asserts the court should have excluded Exhibit 11 in its entirety. On appeal, Mother contends Exhibit 11 was inadmissible because Dr. DeLawyer "considered department records" including "statements of people with whom he never spoke," Dr. Book's psychological evaluation, and another agency's "mental health assessment"; "there are arguable inaccuracies [in] the test scoring because of language that could skew the results"; and the court ordered and the Department paid for the

7

evaluation "arguably for the purpose of creating a plan of action for reunification, not for termination."

At trial, however, Mother's counsel only objected to Exhibit 11's admission on the basis that a psychological evaluation is purportedly inadmissible at the termination trial because the Department required and paid for it. Specifically, Mother's counsel stated:

> [U]sing a psychological evaluation paid for by the Department and the proceeding of a child protection case should be limited to the case plan, working the case plan, making reasonable efforts and providing services, and should not be used for the purpose of a trial to terminate the parental rights of the parent.

As noted above, however, that the evaluation was part of the record in the CPA case alone is not grounds to exclude it from evidence in the termination trial. Rather, it may be admissible so long as "the part offered is admissible under the Idaho Rules of Evidence." *See* I.J.R. 48(e) (providing documents in record of CPA case may be used at termination trial if admissible under the Idaho Rules of Evidence). Mother, however, fails to challenge Exhibit 11's admissibility on any ground other than that Dr. DeLawyer originally created Exhibit 11 for purposes of the CPA case. Moreover, as with Exhibit 10, Mother fails to argue or identify any substantial right Exhibit 11's admission adversely affected. *See* I.R.E. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party."); I.R.C.P. 61 (requiring court to "disregard all error and defects that do not affect any party's substantial rights").

Mother also suggests a cumulative error type challenge to the admission of Exhibits 10 and 11, arguing "it is [sic] error to consider the evidence generated by both psychologists" because "the conclusions of these psychologists were vastly different from each other and therefore, the believability of both reports is in question." Mother, however, cites no authority precluding the magistrate court from considering conflicting evaluations. *See Idaho Dep't of Health & Welfare v. Jane Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (noting appellate court does not address issues not supported by cogent argument and citation to legal authority). Moreover, Mother acknowledged during her trial testimony that she was untruthful during Dr. Book's evaluation. Mother's untruthfulness likely gave rise to the evaluations' "different" conclusions and is not a basis to exclude either or both of the evaluations.

### 3. Witness credibility

Mother also challenges the magistrate court's finding that a Department client services specialist who observed some of Mother's visits with the child and who testified on Mother's

behalf was not credible. At trial, the specialist testified, among other things, that "the cards were stacked against [Mother]"; the Department was "determined" to terminate Mother's parental rights; Department employees "never liked the way [Mother] looked," "never liked the way she acted," and "made fun of her"; and Mother used "illicit drugs" to "self-medicat[e]." Regarding the specialist's testimony, the court found:

> [The specialist] did not provide any corroborating evidence in support of her claims of bias by the Department and downplayed [Mother's] drug use as "self-medication." Based on the contrary testimony and exhibits presented at trial, the court does not find [the specialist's] very serious allegations against the Department to be credible.

On appeal, Mother "disagrees" with the magistrate court's finding that the specialist was not credible" and argues the specialist's "testimony should have been given more weight under the circumstances of the case." Generally, this Court defers to the trial court's special opportunity to assess and weigh the credibility of evidence and witnesses who appear at trial. *Christensen v. Rice*, 114 Idaho 929, 935, 763 P.2d 302, 308 (Ct. App. 1988). A credibility finding, however, like other factual findings must be set aside if substantial and competent evidence does not support the finding. *Stuart v. State*, 127 Idaho 806, 813, 907 P.2d 783, 790 (1995). In this case, substantial and competent evidence supports the magistrate court's credibility finding.

## B.    Best Interests

Mother also challenges the magistrate court's conclusion that terminating her parental rights is in the child's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider, among other facts, the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care, and the parent's efforts to improve her situation. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

On appeal, Mother argues the testimony "in total clearly established Mother's love for her child" and that "where a parent comes from a fairly unique cultural background [the] difference

9

should be given arguably a more significant role in determining best interests for termination." A parent's love, however, does not override the magistrate court's best interests findings. *See Idaho Dep't of Health & Welfare v. Doe (2014-17)*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014) (noting love does not override court's findings). Further, Mother fails to cite any authority for her proposition that the magistrate court should have considered her "unique cultural background" in determining the child's best interest. *See Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247 (noting appellate court does not address issues not supported by cogent argument and citation to legal authority). Regardless, substantial and competent evidence supports the court's findings, among others, that Mother "has an untreated history of trauma, significant mental health concerns, and a substance abuse history of alcohol, marijuana and methamphetamine" and "is struggling to meet her own needs and does not have the additional capacity to provide daily care for a small child."

## IV.

## CONCLUSION

Mother's evidentiary challenges to the magistrate court's findings of neglect fail. Further, Mother failed to establish that substantial and competent evidence does not support the court's best interests findings. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

10